## THE STATE v. LEE.

1. **House of Ill-fame**: REPUTATION: EVIDENCE. In a prosecution for keeping a house of ill-fame, a witness may testify as to the reputation of the house, though his information is obtained from non-resident traveling men accustomed to visit the city where the house is located.

2. ———: ———: ———. In such case, where witnesses testified that the house in question did not have the reputation of a house of ill-fame, it was proper, on cross-examination, to ask them whether they were married men; what interest they had in lewd women and houses of ill-fame; whether they had sons old enough to visit such places; whether they had talked with others in regard to such houses; and similar questions,—for the purpose of showing that the occupations, habits, interests and relations of such witnesses were such as that they would not be apt to hear of the character of the house in question.

3. ———: CONSTRUCTION OF HOUSE: ALL USED FOR ONE PURPOSE. Where the house in question consisted of two stories, connected by a stairway on the outside, and on the inside by an elevator by which liquors were conveyed from the first to the second story, and the first floor was divided into three rooms,—one used for a billiard room, one for a saloon, and one for various purposes; and the second story comprised two rooms,—one used for a drinking and gaming room, and the other for a bed room; but all were used and controlled by defendant in his business, and the evidence tended to show that both stories were frequented by men and women of lewd character, *held* that the court rightly refused to compel the state to elect as to which story it would charge with being a house of ill-fame.

4. ———: KEEPING FOR PROFIT NOT NECESSARY. It is not necessary, under the statute, in a prosecution for keeping a house of ill-fame, to show that it was kept by defendant for purposes of gain.

5.    ———— : EVIDENCE : PROOF OF BAD REPUTATION NOT ESSENTIAL. In such case it is not necessary for the state to prove that the general reputation of the place is bad, if the testimony shows that it is in fact a house of ill-fame, or, what is the same thing, a bawdy-house. Chapter 142, section 4, Laws of 1884, making evidence of bad reputation competent in such cases, does not have the effect to make it necessary; *i. e.*, it does not change the body of the crime. (See opinion for a full discussion upon the authorities.)

6.    ———— : INSTRUCTIONS AS TO USES OF HOUSE. In such case the court instructed, in substance, that in order to find defendant guilty the jury must find that the place in question was resorted to for the purposes of prostitution or lewdness, and that a single act of illicit intercourse in the house, or any number of acts with the proprietor alone, would not make the place a house of ill-fame, but that it must have been used for that purpose more than once by others than the proprietor. *Held* a sufficient statement of the law that the house must have been resorted to for the purposes of prostitution or lewdness.

7.    **Criminal Law :** VERDICT : DEFECT NOT FATAL. Where the court instructed the jury, " If you find the defendant guilty, the form of your verdict will be, ' We the jury find the defendant guilty as charged in the indictment,' " and the verdict as returned was in that form, except that it omitted the word " find." *held* that the defect was not fatal, under section 4464 of the Code, which provides that the general verdict, on the plea of not guilty, is either " guilty " or " not guilty."

8.    ———— : NEW TRIAL : INTOXICATION OF JUROR : EVIDENCE. A motion for a new trial, based on the alleged intoxication of a juror during the trial, was properly overruled, where it was supported by the affidavit of defendant, but contradicted by the affidavit of the juror. (See *State v. Kennedy*, 77 Iowa, 213.)

9.    ———— : ———— : NEWLY-DISCOVERED EVIDENCE. Newly-discovered evidence is no ground for a new trial in criminal cases. (See Code, sec. 4489, and *State v. Bowman*, 45 Iowa, 421.)

*Appeal from Clinton District Court.*—HON. C. M. WATERMAN, Judge.

FILED, MAY 14, 1890.

THE defendant was indicted for the crime of keeping a house of ill-fame, tried by a jury, and found guilty. From the judgment rendered on the verdict he appeals.

*Hayes & Schuyler*, for appellant.

*John Y. Stone*, Attorney General, and *A. R. McCoy*, County Attorney, for the State.

ROBINSON, J.—The indictment charges that the alleged crime was committed in Clinton county, as follows: "The said Harry Lee, on the twenty-fifth day of April, A. D. 1887, in the county aforesaid, did unlawfully and feloniously keep a house of ill-fame, resorted to by divers persons to the grand jury unknown, for the purpose of prostitution and lewdness." The defendant at the time in question occupied the first and a part of the second floor of a building in the city of Clinton. The two floors were connected by means of outside stairways. The front room of the first floor was used as a billiard hall, and the back room on the same floor was used as a saloon. From that a small room was partitioned off, which was used for various purposes connected with the business. The part of the second floor occupied by defendant comprised two rooms, one of which was used for drinking and gaming purposes, and the other was furnished and occupied as a bedroom by an employe of defendant. The evidence tends to show that the saloon and upper rooms occupied by defendant were resorted to by men and women of lewd character.

I. Several witnesses for the state testified that the general reputation of the place was that of a house of ill-fame. On cross-examination, some of them stated that among those who had spoken of the place in their hearing were traveling men who did not reside in Clinton. Defendant objected to testimony as to the statements of such men, on the ground that they were not competent to make statements upon which the reputation of the place could be to any extent founded. But we think the testimony in question was competent. Traveling men who frequently visit a city may acquire as reliable information in regard to places of business, and the

1. HOUSE of ill-fame: reputation: evidence.

nature of the business transacted therein, as that pos-
sessed by its citizens.   Many traveling men are required,
by the nature and purpose of their employment, to
investigate the habits of business men, and the business
in which they are engaged.   The value of their state-
ments would depend upon their means of obtaining
accurate knowledge, and that would be a proper matter
for the consideration of the jury; but their statements
might be proper for the witness to take into account in
stating the general reputation of the person or place to
which they referred.

II.   The defendant introduced a number of wit-
nesses, who testified, in effect, that the place of defendant
did not have the reputation of being a house
of ill-fame at the time in question.   On
cross-examination, they were asked whether they were
married men; what interest they had in lewd women
and houses of ill-fame; whether they had sons old
enough to visit such places; whether they had talked
with others in regard to such houses; and similar ques-
tions.   The questions asked were designed to test the
means of knowledge of the witnesses, and it was
intended to show by the answers that their occupations,
habits, interests and relations were such that they would
not be apt to hear the character of the defendant's place
of business discussed.   We think questions of that
kind were proper, within reasonable limits, for the pur-
pose stated, and we find no error in allowing those of
which complaint is made.

III.   During the progress of the trial defendant
asked that the state be compelled to elect whether to
proceed on the theory that the house of ill-
fame in question was located in the first
story of the building occupied by defend-
ant, or in the second story.   But one act of
sexual intercourse was proven, and that occurred in the
small room adjoining the saloon, in the first story.   The
evidence tended to show that the rooms of defendant in
both stories were frequented by men and women of

2. THE same.

3. ——: con-
struction of
house: all
used for one
purpose.

lewd character, but the appellant contends that there was no internal communication between the two stories, and, therefore, for the purposes of this case, they should have been treated as distinct buildings. It is true the rooms of defendant were used ostensibly for different purposes, but all were so used, and the business carried on in each was so related to the business carried on in the others, that all the rooms were really occupied together for the purposes of carrying on a business which was subdivided into branches. The rooms in the second story occupied by defendant were accessible from the first story by means of a covered stairway used specially by defendant and the frequenters of his place of business. There was also an elevator, by means of which liquor and other articles were sent from the saloon to the rooms of defendant in the second story; thus affording direct internal communication between the various rooms in the two stories used by defendant. It is clear that these rooms were properly treated as constituting but one building, and that the court rightly refused to compel the state to make the election demanded.

IV. It is objected by appellant that the state failed to show that he kept the place in question as a house of ill-fame, for the purpose of gain; but the statute does not make that a necessary element of the crime, and it was not necessary to prove it. 1 Bish. Crim. Law, sec. 1038.

4. ——: keeping for profit not necessary.

V. The evidence in regard to the general reputation of the place in question was conflicting. A majority of the witnesses who testified in regard to it said, in effect, that it did not have the reputation of being a house of ill-fame, and appellant contends that the bad reputation of the place was not established by a great preponderance of the evidence. The court instructed the jury, in effect, that it was not necessary to prove that the general reputation of the place was bad, if the testimony showed that it was in fact a house of ill-fame.

5. ——: evidence: proof of bad reputation not essential.

The State v. Lee.

Appellant insists that the court erred in so instructing the jury, and relies upon the case of *State v. Haberle*, 72 Iowa, 139, as supporting his claim. The question thus presented is whether the statute is violated by the keeping of a house which is resorted to for the purpose of prostitution or lewdness, but which is not generally reputed to be a house of that character. The object of the statute is not to protect the reputation of the house, but to cherish and promote good morals. 1 Bish. Crim. Law, secs. 665, 947, 1038; *Commonwealth v. Lambert*, 12 Allen, 179. The evil influence of a bawdy-house is not necessarily measured by its reputation in the community where it exists. It was said in the case of *State v. Lyon*, 39 Iowa, 379, that evidence to prove the general reputation of the house for prostitution and lewdness was properly excluded; that the house gets its character from that of the inmates, and those who resort to it, and that evidence that such persons are of bad character is competent to establish the bad character of the house. It is true that was a case of prosecution for the crime of leasing a house for the purposes of prostitution and lewdness, but what was therein said in regard to proving the general reputation of the house was applicable to prosecutions of this kind under section 4013 of the Code, as it then existed. Chapter 142 of the Acts of the Twentieth General Assembly repealed that section, and enacted a substitute therefor, but the change thereby made relates only to the punishment, the new statute using the language of the old in describing the offense. Section 4 of the act of 1884, referred to, is as follows: " The state, upon the trial of any person indicted for keeping a house of ill-fame, may, for the purpose of establishing the character of the house kept by defendant, introduce evidence of the general reputation of such house as so kept, and such evidence shall be competent for such purpose." In our opinion, this section was not designed to add to the ingredients of the crime, by requiring that the house should be generally reputed to be a house of ill-fame, but to enlarge the

The State v. Lee.

means of proving its true character. Evidence of the general reputation of the house is made competent, but not conclusive, means of proving its character. Nothing more than that was involved in the instruction approved by this court in *State v. Haberle, supra.* That case involved the constitutionality of the act of the twentieth general assembly, already referred to. It was claimed that under that act a person charged with the crime in question might be convicted by merely proving the reputation of the house he kept. This court held that the statute did not authorize a conviction upon proof of reputation alone, but that it must be shown that the house was resorted to for the purpose of prostitution or lewdness. Whatever is said in the opinion in that case, as to the necessity of proof of the general reputation of the house, should be regarded as argumentative, rather than as a holding that such proof is absolutely essential to a conviction. As is said in the instruction which was approved it is, "competent for the consideration of the jury as a circumstance in the case." "Bawdy-houses" and "houses of ill-fame" are synonymous terms. 1 Bouv. Law Dic. 163; *State v. Smith,* 29 Minn. 193; 12 N. W. Rep. 524; *State v. Boardman,* 64 Me. 529; *Henson v. State,* 62 Md. 231.

In *State v. Smith, supra,* it was said: "The term 'house of ill-fame' is, no doubt, a mere synonym for 'bawdy-house,' having no reference to the fame of the place, but denoting the fact." The gist of the offense is the keeping and use of the house for the purposes of prostitution and lewdness, and not its reputation. *Henson v. State, supra; State v. Boardman, supra.* We are aware that some authorities hold that proof of the reputation of the house is necessary. It was so held in *Cadwell v. State,* 17 Conn. 467, under a statute similar to that of this state. In *State v. Brunell,* 29 Wis. 436, the court condemned an instruction to the effect that, if the defendant was the keeper of the house in question during any part of the time covered by the indictment, and "during that time the reputation of the

VOL. 80—6

house was that of a house of ill-fame," then the defendant. was guilty. It was not said that it must be proved that the reputation of the house was that of a house of ill-fame, but "that the house in question was a 'house of ill-fame, resorted to for the purposes of public prostitution or lewdness,' or, what is the same thing, that it was a common bawdy-house." It was also said that evidence of the general reputation of the house was admissible as tending to show its real character.

In *Drake v. State*, 14 Neb. 535; 17 N. W. Rep. 117, the court used language in harmony with the opinion in *Cadwell v. State, supra;* but whether it was necessary to prove that the reputation of the house was that of a house of prostitution was a question apparently not involved in the case, and not directly considered. The language referred to was used in reference to a point made by appellant that the evil character of the house should have been established by proof of facts, and not by its reputation alone. The court said it was necessary to prove that the house "was really a house of ill-fame, a house resorted to for acts of prostitution," even though it was conceded that defendant was the owner of the house, and knew of the use to which it was put, and that its reputation was that of a house of ill-fame. It was also said that evidence of the general reputation of the house was competent to establish its character.

In view of the general purpose of the statute, and the decisions of this court prior to the amendment of 1884, we conclude that it was not necessary, in order to convict the defendant, to prove that the general reputation of the place in question was that of a house of ill-fame. In *State v. Hand*, 7 Iowa, 412, the court noted the fact that the counsel for defendant admitted that the character of the house might be shown by proving its reputation, and apparently approved the admission, but the point was not fully decided. In *State v. Lyon*, 39 Iowa, 379, the court referred to the case of *State v. Hand*, although it decided that the character of the house could not be shown by proving its general reputation. It is probable that section 4 of chapter 142 of the

Acts of the Twentieth General Assembly was enacted to settle the practice and facilitate proof of the crime. Proof of the character of the house is not alone sufficient. It must be shown, also, that it was resorted to for the purpose of prostitution or lewdness, and that it was kept by defendant, within the meaning of the statute.

VI. The appellant complains that the charge to the jury was not sufficiently full, in that it did not require the jury to find that the place in question was one of resort for the purposes specified by the state. We think the charge, as a whole, properly instructed the jury that, in order to find the defendant guilty, they must find that the place in question was resorted to for the purpose of prostitution or lewdness. It informed the jury, also, that a single act of illicit intercourse in the house, or any number of acts with the proprietor alone, would not make the place a house of ill-fame, but that it must have been used for that purpose more than once by others than the proprietor. The statute does not require that the place be used habitually or for any considerable length of time for the prohibited purposes, in order to constitute the offense in question.

*6. ——: instructions as to uses of house.*

VII. The verdict of the jury was in the following form: "We, the jury, in the case of State of Iowa v. Harry Lee, the defendant guilty as charged in the indictment." The appellant insists that the verdict is fatally defective, for the reason that the word "find" is omitted therefrom. The court charged the jury as to the form of their verdict as follows: "If you find the defendant guilty, the form of your verdict will be, 'We, the jury, find the defendant guilty as charged in the indictment.' If you find the defendant not guilty, you will say so; and, in either event, let your verdict be in writing, and signed by one of your number as foreman." Section 4464 of the Code provides that the general verdict, on the plea of not guilty, is either "guilty" or "not guilty," and that such a verdict imports a conviction or acquittal on

*7. CRIMINAL law: verdict: defect not fatal.*

every essential allegation in the indictment. The ver-dict returned said, "guilty as charged in the indict-ment," and, when it is considered in connection with the instruction as to its form, there is no room for doubt. as to the intention of the jury. The verdict is, there-fore, sufficient.

VIII. After the verdict was given, defendant filed a motion in arrest of judgment and for a new trial. One of the grounds of the motion was that a juror drank intoxicating liquor and was intoxicated during the trial. It was sup-ported by the affidavit of defendant, and was contradicted by the affidavit of the juror. We can-not say that the court erred in overruling the motion on that ground. *State v. Kennedy*, 77 Iowa, 213. Another ground of the motion was that evidence material for the defense had been dis-covered since the trial. That ground is not recognized by the statute in criminal cases. Code, sec. 4489; *State v. Bowman*, 45 Iowa, 421.

IX. We have considered all the questions dis-cussed by counsel, and find no error prejudicial to defendant. The judgment of the district court is, therefore,                                            AFFIRMED.

8. ——: new trial: intoxi-cation of juror: evi-dence.

9. ——: ——: newly dis-covered evi-dence.