WESLEY BUNFILL

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield January 14, 1895.*

1. CRIMINAL LAW—*construction of act to prevent prostitution of females.* The gist of the offense prohibited by section 2 of the act of 1887, to prevent the prostitution of females, is the detention or confinement of the female, against her will, for the purpose of prostitution or with intent to cause her to become a prostitute.

2. SAME—*detention and intercourse do not alone make the crime.* The confinement by a step-father of his step-daughter, against her will, in a room of his own house, and having sexual intercourse with her, do not constitute the crime prohibited by section 2 of the act of 1887, to prevent the prostitution of females.

WRIT OF ERROR to the Circuit Court of Brown county; the Hon. JEFFERSON ORR, Judge, presiding.

Instructions 6, 7 and 8, referred to in the opinion of the court as erroneous, are as follows :

6. "You are instructed that in passing upon this case you have a right to take into consideration the fact of the girls' ages ; also the further fact, if you find the same to be a fact, that the defendant was and is the step-father of the prosecuting witnesses, in determining as to whether threats or intimidation was used to cause said Laura and Ida Goodwin to be guilty of prostitution, fornication or concubinage, if you find they were guilty of prostitution, fornication or concubinage.

7. "The court instructs you that the question as to whether the defendant did or did not detain or confine said Laura and Ida Goodwin, or either of them, in the room or house mentioned by the witnesses, is one of fact, for your determination from the evidence ; and in the determination of such question it is your duty to take into consideration all the evidence in the case, and if, after you shall have thus considered the evidence, you

shall find therefrom, beyond a reasonable doubt, that the defendant, Bunfill, in manner and form as charged in the indictment, detained or confined said Laura Goodwin or Ida Goodwin in the room or house mentioned by the witnesses Laura Goodwin and Ida Goodwin, and, while so detained or confined, by threats compelled such witnesses to submit to having sexual intercourse with said defendant, Bunfill, against their will, then, if you find the facts last above stated, you should find defendant guilty.

8. "You are instructed that before the People would be entitled to a verdict of guilty it would be incumbent upon the People to establish each material allegation in the indictment, or some one count thereof, by competent evidence, beyond a reasonable doubt."

E. A. PERRY, for plaintiff in error :

There must be proof of a detention for purpose of prostitution, or a detention with intent to cause the female to become a prostitute. The intent to make a prostitute is the gist of the offense.

In the seventh instruction for the People the court describes a state of facts which would constitute rape, and instructs the jury that if they find such a state of facts they should find the defendant guilty. The statute will not bear so liberal a construction. Penal statutes are to be strictly construed, and not extended, by implication, to what is not expressly within their terms. *Wright* v. *People*, 61 Ill. 382.

In construing a statute the true intent is to govern. 1 Kent, 462; *Hamilton* v. *State*, 102 Ill. 367.

The intent is to be gathered from the necessity or reason of the enactment. (*Castner* v. *Walrod*, 83 Ill. 171.) But to give effect to what is deemed the intent, the court is not to give the statute a construction not supported by the words, although the statute is thus defeated. *Frye* v. *Railroad Co.* 73 Ill. 399.

154—41

The several provisions of the law should be construed together, in the light of the general objects and purposes of the enactment. *Hill* v. *Harding,* 93 Ill. 77.

The title of an act, though no part of the act, is not to be wholly disregarded in construing a statute. *Cruse* v. *Aden,* 127 Ill. 231.

One section should thus be construed with reference to the provisions of other sections relating to the same subject matter, so as to give all the words in the different sections effect according to their ordinary meaning. *Thompson* v. *Bulson,* 78 Ill. 277.

The meaning of a statute is to be ascertained from the words employed,—nothing adding thereto, nothing diminishing,—the words to be interpreted according to their common and proper acceptation and import. *Steere* v. *Brownell,* 124 Ill. 27.

If a literal construction is not absurd, or palpably unjust, or contrary to any imperative public exigency, a statute should be construed literally, according to its plain and natural import. *Deere* v. *Chapman,* 25 Ill. 610.

Where the words of a statute are in common use, they are to be taken in their natural, plain, obvious and ordinary signification and import. *Herring* v. *Poritz,* 6 Ill. App. 208.

The words "prostitution" and "concubinage," in the Criminal Code, were used by the legislature in their general or popular signification. 2 Bouvier's Law Dic. 389; *Slocum* v. *People,* 90 Ill. 274.

M. T. MOLONEY, Attorney General, ALEXANDER HEDRICK, State's Attorney, T. J. SCOFIELD, and M. L. NEWELL, for People :

By the word "prostitution," in its most general sense, we admit, is understood the act of letting one's self for sale. In a more restricted sense the word means the act or practice of a female offering her body to an indiscriminate intercourse with men. 19 Am. & Eng. Ency. of Law,

291; *State* v. *Stoyell,* 54 Me. 26 ; *Carpenter* v. *People,* 8 Barb.
610 ; *Miller* v. *State,* 121 Ind. 297; *State* v. *Rice,* 56 Iowa, 432;
*Fahnestock* v. *State,* 102 Ind. 161.

It has been held that incontinence with one or two
persons may constitute a woman a prostitute, and that
it is not essential that she should have submitted her
person to illicit sexual intercourse with various persons.
*State* v. *Rice,* 56 Iowa, 432.

A woman may be a prostitute, within the meaning of
the law, and yet have illicit connection with but one
man.    To be a *common* prostitute her lewdness must be
more general and indiscriminate.    *Morgan* v. *State,* 16 Tex.
App. 593.

Our statute does not use the term "common prostitu-
tion"—it is prostitution, simply; and this, we apprehend,
is intended to mean the prostitution of the female's
character for virtue.

Our constitution provides that "no act hereafter passed
shall embrace more than one subject, and that shall be
expressed in the title." (Const. 1870, art. 4, sec. 13.)  The
provisions of the act are in line with the subject, as ex-
pressed in the title, to prevent the prostitution of females
—the prostitution of their character for virtue.    This
construction of the term is sustained by our leading law
lexicographers.    2 Bouvier, 481; 2 Abbott, 340; Anderson,
839; 2 Rapalje, 1029.    See, also, *State* v. *Rice,* 58 Iowa, 431.

A consent induced by fear of personal violence is no
consent, and though a man lay no hand on a woman,
yet if by an array of physical force he so overpowers
her mind that she dares not resist, he is guilty of rape
by having the unlawful intercourse.  Bishop on Crim. Law,
(6th ed.) sec. 1125 ; *Pleasant* v. *State,* 8 Eng. 360; *Regina* v.
*Hallett,* 9 C. & P. 748; *Regina* v. *Day,* id. 722; *Regina* v. *Jones,*
4 Lit. (N. S.) 154; *Wright* v. *State,* 4 Humph. 194; *Turner* v.
*People,* 33 Mich. 363; *Bass* v. *State,* 16 Tex. App. 62; *Huston*
v. *People,* 121 Ill. 467; *State* v. *Ward,* 73 Iowa, 532 ; *State* v.
*Ruth,* 21 Kan. 583 ; *People* v. *Clemons,* 37 Hun, 580.

PHILLIPS, J.:  The second section of an act entitled "An act to prevent the prostitution of females," approved June 7, 1887, is as follows:  "Whoever shall unlawfully detain or confine any female, by force, false pretence or intimidation, in any room, house, building or premises in this State, against the will of such female, for purposes of .prostitution or with intent to cause such female to become a prostitute, and be guilty of fornication or concubinage therein, or shall, by force, false pretence, confinement or intimidation, attempt to prevent any female so as aforesaid detained from leaving such room, house, building or premises, and whoever aids, assists or abets, by force, false pretence, confinement or intimidation, in keeping, confining or unlawfully detaining any female in any room, house, building or premises in this State, against the will of the female, for the purposes of prostitution, fornication or concubinage, shall, on conviction, be imprisoned in the penitentiary not less than one or more than ten years."  Under this section the defendant was indicted, tried and convicted, and sentenced to the penitentiary for the term of nine years.

The indictment contains three counts, the first of which charges the defendant with detaining and confining one Ida Goodwin, against her will, in a house or room, by force and intimidation, for the purpose of prostitution. The second count charges the defendant with confining and detaining in a house or room, for the purpose of prostitution, one Laura .A. Goodwin, against her will, and with the intent of causing her to become a prostitute and be guilty of concubinage.  The third count charges the defendant with detaining Ida Goodwin and Laura Goodwin by force and intimidation, against their will, in a room, for the purpose of prostitution and concubinage. There was no motion to quash the indictment made, nor was there a motion in arrest of judgment.

The offense designated by this statute is of a similar nature to that declared by the first section of the Crim-

inal Code, and the offense under each is a felony. *Slocum et al.* v. *People*, 90 Ill. 274.

The evidence discloses that the defendant became the step-father of Laura A. Goodwin and Ida Goodwin when the former was about the age of ten years and the latter about the age of seven years. Shortly after that relation was created by his marriage with their mother, he had illicit intercourse with Laura A., which continued, by frequent carnal acts, until about the time of his arrest, shortly before trial. The same thing occurred with Ida from the time she was thirteen until his arrest, at which time she was about seventeen years old, and to Laura and Ida each a child was born. The testimony of each is, that the subjection of each to his embraces resulted from threats and acts of violence towards each, by which he compelled Laura to accompany him to a room, where he had intercourse with her,—on one occasion in his own house; and the testimony shows that Ida was once pulled from her bed and compelled to go to his. The frequent recurrence of the carnal acts—sometimes all three being in the same bed and at others his children being in the same room—is shown by the testimony of both Ida and Laura, and also by that of his own son, a boy of nine. The defendant admits that the testimony of Laura and Ida is in the main correct as to the threats being made, but claims that they were made by previous arrangement, to deceive their mother as to their having consented, and further declares that each act of intercourse was at the solicitation of the females. The evidence discloses the fact that the defendant objected to either of the females being away from the house, and seriously objected to their association with young men, and was angry if they allowed themselves to be escorted by young men to their homes from respectable places where the young congregated.

The crime, depravity and immorality shown by the evidence in this record are of such character, that, not-

withstanding the flexibility of our language, it is difficult to find synonyms to describe them without making the statement offensive for obscenity. We will not, for the purpose of discussing questions of law, attempt to state the more hideous bestiality still existing in this record and not herein stated, which is of a nature calculated to startle, and cause one to believe that there are localities where civilization is separated from barbarity by a film that is diaphanous.

The first section of the act of June 7, 1887, was designed to prevent the loathsome occupation of procurers and procuresses, which, with cunning, brazen effrontery and brigandish boldness, endangered young women residing in or visiting our larger cities, and sought to guard and prevent those of chaste life and conversation, resident or being in this State, from being taken to dance houses, gardens or premises where prostitution, fornication or concubinage is practiced, unless they went with knowledge of the character of the place, and without being induced to do so by false pretence, enticement or inducement. It also provided penalties for violations of its provisions. The third section of the act was designed to prevent the keepers of such houses from suffering or permitting any unmarried female under the age of eighteen to live, board, stop or room therein, and provided penalties for violations thereof. The fourth section of the act was designed to punish those who enticed or induced any unmarried female to come into this State for the purpose of prostitution, fornication or concubinage, and for the prevention thereof. The fifth and last section of the act provided that it should not affect section 1 of the Criminal Code. These sections, together with the title of the act, must be considered in determining the construction of section 2, under which this indictment was found.

The terms "prostitute," "prostitution," "fornication" and "concubinage," as used in section 2, are, by a general

rule of construction, to be construed according to their most usual and best understood signification. The first clause of section 2 is: "Whoever shall unlawfully detain or confine any female, by force, false pretence or intimidation, in any room, house, building or premises in this State, against the will of such female, for purposes of prostitution or with intent to cause such female to become a prostitute, and be guilty of fornication or concubinage therein." The words, "and be guilty of fornication or concubinage," must be read in connection with the previous terms, and require the female to be detained or confined, against her will, for purposes of prostitution or with intent to cause her to become a prostitute. "Prostitution," as defined by Webster, is: "The act or practice of prostituting or offering the body to an indiscriminate intercourse with men; common lewdness of a female;" and is defined in the Century Dictionary as "the act or practice of prostituting or offering the body to indiscriminate sexual intercourse for hire." The section then proceeds: "Or shall, by force, false pretence, confinement or intimidation, attempt to prevent any female so as aforesaid detained, from leaving such room, house, building or premises,"—that is, detained, against her will, for purposes of prostitution or intent to cause her to become a prostitute. This section of the statute, to this extent, deals with the guilty actor, and has reference to the principal offender, and holds up as the predominant idea of the crime the purposes of prostitution or the intent to cause such female to become a prostitute. Such intent is a condition precedent to the commission of the crime. The following provisions of that section then take a broader signification, and it is declared: "And whoever aids, assists or abets, by force, false pretence, confinement or intimidation, in keeping, confining or unlawfully detaining any female in any room, house, building or premises in this State, against the

will of the female, for the purpose of prostitution, fornication or concubinage, shall, on conviction," etc. This clause, in connection with the previous sections, best indicates the scope and purpose of the act, and for the first time in that section declares the detention for purposes of concubinage to be a criminal act, without connecting it with the "intent to cause such female to become a prostitute, and be guilty of fornication or concubinage." The act, by its terms, punishes one who aids, abets or assists in keeping, confining or unlawfully detaining any female, against her will, in any room for purposes of concubinage, and has not within its terms words which would inflict punishment for the same act upon the single actor in the crime,—and this most fully and clearly shows the object of the legislature in the adoption of the act was to reach that class indicated in the first section of the act.

The sixth, seventh and eighth instructions given for the People were based on the theory that confinement of the prosecuting witnesses in a room against their will, and having sexual intercourse under such circumstances, constituted guilt. The statute does not so declare, and it was error to so instruct. This construction of the words used in the statute is sustained by *Fahnestock* v. *State*, 102 Ind. 156, and *Commonwealth* v. *Cook*, 12 Metc. 93.

The enactment of the statute is for the legislature—its construction and enforcement rest with the courts; and however the heinousness of a crime may appeal for punishment, less evil results from a failure to punish than from an improper and unjust administration of the law. Crimes of this character may be punished under other sections of the Criminal Code, whereby the rights of society and dignity of the State can be secured and protected. Prosecutions can only be conducted under and in accordance with the statutes, which, when of a penal character, are always to be strictly construed.

The evidence did not warrant a conviction under this statute, and the jury were so improperly instructed that the defendant is entitled to a new trial and to be discharged from custody. "The law allows it and the court awards it."

The judgment of the circuit court of Brown county is reversed and the cause remanded.

*Reversed and remanded.*