PEOPLE *v.* WHEELER.

1. JURY—SUMMONING—DEFICIENT PANEL—STATUTES.

    On the regular panel of jurors being exhausted, it is proper for the court, with respondent's consent, to direct the drawing in the regular way of persons to serve as jurors from the lists furnished from designated townships; section 344, 1 Comp. Laws, providing for summoning talesmen, not being mandatory.

2. DISORDERLY HOUSE—EVIDENCE—ADMISSIBILITY.

    On a prosecution for keeping a house of ill fame between designated dates, testimony of the reputation of the house prior to the earliest date, though of no value when standing alone, is admissible if, when taken in connection with other undisputed evidence, it indicates that the house under the same management had acquired a reputation prior to the earliest date, which continued up to and during the period charged in the information.

3. SAME—ELEMENTS OF OFFENSE.

    Evidence that a house was a house of ill fame is not alone sufficient to warrant a conviction for keeping a house of ill fame resorted to for the purpose of prostitution; the elements of the offense being that the house was of ill fame, was being resorted to for the purpose of prostitution, and was kept by respondent.

4. SAME—EVIDENCE—ADMISSIBILITY.

    On a trial for keeping a house of ill fame, there was evidence that respondent kept a house, and that the inmates paid her for board and room rent and divided with her their earnings. A female testified to telephoning to respondent from another town, inquiring whether she needed any more girls, and, on receiving an affirmative answer, the witness became an inmate. There was no evidence that respondent had a husband, except an understanding in the community that a certain man was her husband. There was no evidence that this man had any connection with the business carried on at the house. *Held*, that the admission of evidence that respondent under an assumed name kept bank and store accounts was not reversible error.

5. SAME—COERCION OF HUSBAND—INSTRUCTIONS.
> The court did not err in refusing to charge that the law presumed that what respondent did in keeping the house was done under the coercion of her husband unless the contrary appeared, where he charged that the jury, in order to convict, must be satisfied that she was the keeper of or aided in keeping the house.

Exceptions before judgment from Hillsdale; Chester, J. ' Submitted November 16, 1905.. (Docket No. 239.) Decided December 4, 1905.

May Wheeler was convicted of keeping a house of ill fame. Affirmed.

*Richard Price* and *Charles A. Shepard*, for appellant.

*Clayton A. Powell*, Prosecuting Attorney, for the people.

OSTRANDER, J.   Respondent was convicted of keeping a house of ill fame, resorted to for the purpose of prostitution and lewdness.   The case comes here on exceptions before sentence.   The errors assigned and argued may be grouped as (1) those relating to the selection of the jury; (2) those relating to the admission and exclusion of testimony; (3) those relating to the charge and to refusals to charge as requested.

1. The panel of jurors having been exhausted with three jurors in the box, and one juror summoned from among the bystanders having been excused for cause, the.. following took place:

"*The Court:* Gentlemen, we have exhausted the panel. I am inclined to think we had better send out a special venire for jurors; and have you any suggestions to make as to how they shall be selected ?

"*Mr. Shepard:* Why, I don't want to waive any rights here, your honor, in the matter.   I would be better prepared to make that statement if I could see Mr. Price.   I would suggest, however, that the usual course ought to prevail.

" *The Court:* Well, we have used here the usual course of summoning talesmen from bystanders, or of letting the sheriff select or write down a list of names from the different townships, 40 or 50 or 60 names, and then allow each the prosecutor and the attorney for the defendant to strike off a certain number, and let him bring in the balance. I suppose— The statute provides a way, by drawing upon the names that have been returned. Just as soon do that way.

" *Mr. Shepard:* Well, whichever way would be directed by the judge.

" *The Court:* I think, then, unless it is done by agreement, we will draw from the names returned. I didn't know but we might agree upon the townships, though.

" *Mr. Shepard:* Yes, I am willing to do that, so far as that is concerned. So far as I am concerned, why, it would perhaps suit the wishes of the sheriff better if he could suggest what would be more desirable on his part, which would be most convenient. I suggest that they be drawn as far away from the city as—

" *The Court:* Well, how about Camden? Would that be all right ?

" *Mr. Shepard:* Yes.

" *The Court:* Amboy, Wright, Pittsford, Ransom, Wheatland, Somerset, Moscow, Scipio, Litchfield—any objections to drawing from those townships ?

" *Mr. Shepard:* No, sir.

" *The Court:* That is ten townships."

An order was entered reading:

" It appearing to the court that the regular panel of jurors summoned for this term have been exhausted in this case, and that a sufficient number of jurors were not drawn and summoned for the term, and that it is necessary to have drawn and summoned other jurors for service at this term and in this case.

" Therefore it is hereby ordered that forthwith there be drawn, in pursuance of the statute made and provided, from the list of petit jurors returned, 30 jurors, and that they be summoned to appear forthwith; and it further appearing to the court that the jurors of the regular panel from the city of Hillsdale and vicinity had formed opinions in this case such as disqualified them from sitting, and by consent of counsel for respondent in open court

that the jurors to be drawn should be drawn and summoned from the outlying townships and the townships hereafter named; therefore it is hereby ordered that said 30 jurors be drawn from the townships of Camden, Amboy, Wright, Pittsford, Ransom, Wheatland, Somerset, Moscow, Scipio, and Litchfield in this county."

Pursuant to this order jurors were drawn from the list of petit jurors returned, and in the regular way for drawing jurors for the term, by the clerk, sheriff, and two justices of the peace. From jurors so drawn the selection of a jury proceeded to the point where, with 12 jurors in the box (3 of the original panel and 9 of the special panel), and after a number of jurors had been excused for cause upon the examination of counsel for respondent, who had exhausted peremptory challenges, said counsel filed in writing a challenge to the array as follows:

"And now, at this day, to wit, the 28th day of December, 1904, at Hillsdale, in said county, came as well the said people as the said defendant by their respective attorneys, and the jurors of the jury impaneled in this cause also came, and hereupon the said defendant challenges the array of the said panel, because he says that the order of the court upon which the jurors Nelson Humphrey, J. M. Valentine, James Ritchey, Wilber Gardner, Frank Lewis, Frank Denning, Charles B. Case, O. A. Roe, and Myron Comstock were drawn and summoned to appear is without jurisdiction and void, and was made without the consent of defendant; secondly, the defendant challenges the array of the said panel because, after the regular panel of jurors for the present term had been exhausted, 30 jurors, including the jurors whose names are given above, were ordered drawn, and were drawn from the list of petit jurors which had been returned under the law prior to the drawing of the regular panel, and the said jury was completed from the list thus drawn without authority of law, and the jurors whose names are given above were drawn and summoned as jurors in this case without authority of law and in violation of the rights of defendant; third, because defendant never consented to the method pursued in drawing said jurors, nor waived her right to object to the same.

And this the defendant is ready to verify, whereupon she prays judgment and the said panel may be quashed."

The challenge was overruled. Thereupon the nine jurors selected from the special panel were challenged for cause for the reasons set out in the challenge to the array, which challenges were overruled.

It is said that the method and only lawful method of completing the panel is that pointed out in 1 Comp. Laws, § 344, and, as this method was not followed, respondent was not tried by a lawful jury. It is contended on the part of the people that counsel for defendant consented to the method pursued, and also that objections were not seasonably made. The statute referred to is not in its terms mandatory, nor is any authority brought to our attention for the proposition that the course pursued was an improper one. It is clear that consent was in effect given to the selection of jurors from the townships from which they were drawn. There is no pretense that there were not proper lists returned from which to draw, or that in making the drawing which was made the statute method was not pursued. We think the objection without merit, and that the challenge to the array was properly disallowed.

2. There was abundant and convincing evidence produced to show that the house occupied by respondent was a house of ill fame, resorted to for the purpose of prostitution and lewdness, between the dates laid in the information, which were March 1, 1904, and October 8, 1904. It is complained, however, that some of the testimony received was objectionable, and that in receiving it there was error. This testimony related to the reputation of the house at periods prior to March 1, 1904. Standing alone, this testimony would not have been of value to prove the charge laid. In connection with other and undisputed testimony, it indicated merely that the same place, under the same management, had acquired, prior to the earliest date laid in the information, a reputation which con-

tinued to and during the period charged in the informa-
tion.   A further objection is that witnesses were permit-
ted to testify to the character of the house from its general
reputation in the community during the period laid in the
information and for a period of two or three years prior
thereto.   Evidence that the house was one of ill repute
would not alone warrant a conviction of the offense
charged.   The essential elements of the offense charged
are that the house was of ill fame, was resorted to for the
purposes alleged, was kept by respondent, or that she aided
in keeping it.   *People* v. *Russell*, 110 Mich. 46.   Taken
in connection with other and undisputed evidence in the
case, there was no error committed in receiving the evi-
dence of reputation.   Other objections to rulings upon
testimony offered will be referred to later on.

3. The evidence in the case shows that respondent is a
married woman, and that, during the period laid in the
information, she and her husband were both living at the
place in question.   Counsel for respondent requested the
court to charge the jury that:

" The evidence shows that the defendant was married,
and during the time laid in the information was living
and making her home with her husband at 66 North street,
in the city of Hillsdale.   Now I charge you the presump-
tion of the law is that whatever defendant did in the way
of keeping this house, if she did anything, was done under
the coercion of her husband until the contrary is made to
appear beyond a reasonable doubt by the people, and in
order to sustain this prosecution the people must prove
this by a preponderance of the evidence, and if they have
not shown beyond a reasonable doubt that the defendant
was the keeper of this house, and did keep it, without
coercion on the part of her husband, your verdict must be
for the defendant, and you must not convict her."

This was refused, and error is assigned upon such re-
fusal.   In the charge given, no direct reference is made
to the fact that the respondent was a married woman, and
no instruction was given upon the subject of presumption
to be indulged or rules to be followed in determining

whether duress was exerted, or the effect if duress was exerted, by the husband. The jury were instructed, upon this point, that they must be satisfied beyond a reasonable doubt that respondent was the keeper of, or aided and assisted in keeping, the place in question. There is no evidence that respondent had a husband, excepting an understanding in the community that a man named Carl Wheeler was her husband, and proof of the fact that he and respondent had lived together apparently as husband and wife. The evidence fails to connect the husband of May Wheeler, or May Gardner, as she was sometimes called, with the business carried on at the house. The testimony admitted is undisputed and is to the effect that respondent, under the name Sarah Wheeler, kept an aoccunt at a local bank, and also one at a local hardware store. She occupied a three-story building, having on the ground floor a dancing room and some parlors, on the second floor living rooms and bedrooms, and on the third floor bedrooms. The cook and girls who were staying at the place during the time mentioned in the information—who were inmates of the house—conducted their commercial transactions with respondent; the girls paying her for board and room rent, and dividing with her their earnings. One of them testified to having telephoned to respondent from another city, inquiring if she needed any girls, receiving an affirmative answer, and thereafter becoming an inmate of the house from March 27, 1904, to September, 1904. In view of this undisputed testimony, no testimony having been offered on the part of respondent, we think it was not error which should reverse the case to receive the testimony concerning the bank account and the store account, in connection with the other positive testimony produced, as having some tendency to show the relation of respondent to the business carried on at this place. Nor was it error to decline to give to the jury the instruction preferred on the part of the respondent. There is no presumption that the wife was coerced. 1 McClain on Criminal Law, § 148; *Commonwealth* v. *Cheney*, 114 Mass. 281.

The testimony does not even suggest that there was coercion, in fact.   We have read the charge to the jury, and find it to be a fair one and fully as favorable to respondent as the case warranted.

No error appearing, the conviction is affirmed, and the court below advised to proceed to sentence.

GRANT, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.