(No. 12288.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JESSIE RYBERG, Plaintiff in Error.

*Opinion filed February 20, 1919—Rehearing denied April 2, 1919.*

1. CRIMINAL LAW—*object of statute against permitting unmarried female under eighteen to room in house of prostitution.* The statute making it a penitentiary offense to permit an unmarried female under the age of eighteen years to live, board, stop or room in a house of prostitution is designed for the protection of young girls and is leveled against keepers of such houses.

2. SAME—*gist of offense of permitting unmarried female under eighteen to room in house of prostitution.* The gist of the offense of permitting an unmarried female under the age of eighteen years to live, board, stop or room in a house of prostitution consists in permitting her to live, stop, board or room in such a house for any purpose, and it is not an element of the crime that she practiced prostitution with the assent of the keeper or was lacking in virtue.

3. SAME—*what is a house of ill-fame.* A house of ill-fame or assignation for the purpose of prostitution is a house where women prostitute themselves by offering their bodies to indiscriminate intercourse with men, and the term "house of ill-fame" has no reference to its reputation.

4. SAME—*to be guilty of permitting young girl in house of prostitution the defendant must be the keeper of such house.* To bring a defendant within the scope of the statute against permitting an

unmarried female under the age of eighteen years to live, board, room or stop in a house of prostitution it is necessary that the party charged be the keeper of the house in question and that such house be kept for the purpose of practices referred to in the statute.

5. SAME—*what constitutes keeping house of prostitution.* To constitute the keeping of a house of prostitution there must be the keeping of a house, though it be but one room; but it is not essential that such keeping be done for profit.

6. SAME—*character of an assignation house may be shown by circumstantial evidence.* The character of an assignation house may be shown by circumstantial evidence from which the jury may fairly infer the character of such house.

7. SAME—*whether house is kept for purpose of prostitution is question for jury.* In the prosecution of a person charged with permitting an unmarried female under the age of eighteen years to stop in a house of prostitution, it is a question for the jury to decide, under proper instructions from the court, whether or not the house of the defendant was a house of prostitution.

8. SAME—*when trial court does not err in refusing to compel State to admit truth of the defendant's affidavit for continuance.* Where the defendant files an affidavit for a continuance on the ground that certain witnesses are absent and cannot be had the trial court may require the State to admit the truth of the affidavit to avoid a continuance, but where there is no showing that the witnesses can be had at the next term of court it is not error for the court to require only that the State admit that if the witnesses were present they would testify as set out in the affidavit.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. R. K. WELSH, Judge, presiding.

J. E. GOEMBEL, and ROY F. HALL, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, WILLIAM JOHNSON, State's Attorney, and FLOYD E. BRITTON, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was indicted, tried and convicted in the circuit court of Winnebago county upon an indictment charging her with allowing Daisy Roberts, an unmarried

female under the age of eighteen years, to live, board, stop and room in a house of prostitution or assignation house, building or premises of which the plaintiff in error was charged with being the keeper. The house or premises in question was located in the town of Rockford and just outside of the corporate limits of the city of Rockford, in Winnebago county, Illinois. The plaintiff in error was sentenced to the penitentiary at Joliet for a term of not less than one year nor more than five years. Motions for new trial and in arrest of judgment were made and overruled, and the record has been removed to this court by writ of error.

The indictment as originally drawn was in ten counts. On motion all but the first, second, third and sixth were quashed. The first, second and sixth counts charge that the plaintiff in error on December 18, 1917, being the keeper of a certain house of prostitution where prostitution was allowed and practiced, situated in the town of Rockford, in said county and State, did then and there unlawfully, corruptly and feloniously suffer and permit Daisy Roberts, an unmarried female under the age of eighteen years, to-wit, of the age of fifteen years, to then and there stop and live in said house of prostitution. The third count of the indictment charges the plaintiff in error with being the keeper of a certain assignation house, where assignation and fornication were unlawfully allowed and practiced, and that she unlawfully and feloniously suffered and permitted Daisy Roberts, being an unmarried female under the age of eighteen years, to-wit, of the age of fifteen years, to then and there stop and room in said assignation house.

Preceding the trial the plaintiff in error sought a continuance of the cause and by affidavit in support thereof stated that a number of persons (naming them) were material witnesses in her behalf; that all were in the United States army; that she had caused subpoenas to be issued for said witnesses; that none except one Curtis were found

in said county; that all except Curtis were in France or on their way to France; that they were material witnesses and could not be had on account of said service; that they would testify to certain facts therein set out relative to certain acts of sexual intercourse with Daisy Roberts. The court held that the affidavit was sufficient, but the State's attorney, to avoid a continuance, admitted that if the witnesses were present they would testify to the facts alleged in the affidavit. The plaintiff in error asked the court to exercise the discretion granted by statute and require the People, in order to avoid a continuance, to admit the truth of the testimony which the affidavit alleged the witnesses would give. The court refused to exercise such discretion, to which the plaintiff in error excepted.

The house in question was what is known as a two-story dwelling, in the second story of which the plaintiff in error and one child resided. This house was situated in a residence district just outside of the corporate limits of the city of Rockford. During two weeks of the month of December, 1917, Daisy Roberts worked at the Chick Hotel, in the city of Rockford. She was sixteen years of age on the 10th day of February, 1918, and was unmarried. She met the plaintiff in error in the house in question during the month of December, 1917. On this occasion Lorenzo Brown and Jess Frankenberg, soldiers from the camp near by, were at the home of the plaintiff in error. Complaining witness testified that on this occasion she had sexual intercourse with Brown in a bed-room of the Ryberg apartment; that she remained there about one hour, after which she returned to the Chick Hotel. The next night she met the plaintiff in error in front of this hotel and was by her invited to go to her apartment. On this occasion one Hodges and Frankenberg were at the home of plaintiff in error. She further testified that on this occasion she had sexual intercourse with Hodges in this apartment and saw plaintiff in error and Frankenberg lying on a bed as she

went to a room with Hodges; that on December 15, 1917, she again went to the house of the plaintiff in error. On this occasion Frankenberg and a soldier by the name of Curtis were there; that she and Curtis had sexual intercourse in a bed-room in the apartment on this occasion, remaining there all night. She testified that Frankenberg was in a bed-room with the plaintiff in error all°night and that the plaintiff in error called her about seven o'clock the next morning. They remained there the next day and evening. On the 18th of December, 1917, the complaining witness, at the direction of·the officers, went to the home of the plaintiff in error. On this occasion the plaintiff in error and two other women were there, with three men from the camp. Complaining witness testified that on this occasion she had sexual intercourse with Sergeant Jacobs in one of the bed-rooms of this apartment, after which she signaled the officers and a raid was made on the apartment. The deputy sheriff testified that he found the plaintiff in error and two other women in the apartment besides Daisy Roberts; that the Roberts girl was in the bed-room with Jacobs; that Curtis was under a bed; that Curtis had on a uniform, shirt, trousers and stockings but no shoes or leggings.

The plaintiff in error testified that she did not have sexual intercourse with any of the men on either of the four occasions mentioned and that she did not know that Daisy Roberts did; that she only entertained the soldier boys in her home and supplied amusement, cigarettes, sandwiches and coffee; that if Daisy Roberts had sexual intercourse on either of the occasions mentioned it was without her knowledge or approval; that Daisy Roberts never went to the bed-rooms with the men as by her related; that on the third occasion neither Daisy Roberts nor plaintiff in error slept with the men, as related; that the men were there on these occasions solely for respectable entertainment and refreshments and not for the purposes of prostitution; that if

Daisy Roberts had sexual intercourse with any of these men it was a matter of her own inclination and not at the solicitation of plaintiff in error or by her approval and consent.

Numerous assignments of error are made by plaintiff in error. It is urged on her behalf that the evidence does not show her house to have been at the time in question a house of prostitution or assignation or a building or premises in the State where prostitution, fornication or concubinage is allowed or practiced.

Section 3 of the statute under which the indictment was returned reads as follows: "Whoever, being the keeper of a house of prostitution, or assignation house, building or premises in this State where prostitution, fornication or concubinage is allowed or practiced, shall suffer or permit any unmarried female under the age of eighteen years to live, board, stop or room in such house, building or premises, shall, on conviction, be imprisoned in the penitentiary not less than one year nor more than five years." (Hurd's Stat. 1917, p. 962.)

The statute in question is leveled against keepers of houses of prostitution or assignation, and the offense consists in suffering or permitting an unmarried female under the age of eighteen years to live, board, stop or room in such house. (*People* v. *Lee,* 237 Ill. 272.) It is not an element of the crime that the female permitted to live, board, stop or room in such house was practicing prostitution there or that she shall be even lacking in virtue, but the offense consists in permitting her to live, stop, board or room in such a house for any purpose. The statute was designed for the protection of girls, and if the keeper of such house permitted one of the prohibited class to stay therein she did it at her peril. (*McGuire* v. *People,* 219 Ill. 16.) That the complaining witness, Daisy Roberts, was permitted to stop at the house of plaintiff in error was established by the evidence. It follows, therefore, that if, as a matter of fact, the house of the plaintiff in error was a

house of prostitution or assignation or building or premises
where prostitution, fornication or concubinage was allowed
or practiced, it is not material whether plaintiff in error
consented to or had knowledge of actual illicit intercourse
on the part of Daisy Roberts.

This raises the question as to what, under the laws of
this State, constitutes a house of prostitution or assignation
or building or premises where prostitution, assignation or
concubinage is allowed or practiced. In the case of *Bunfill
v. People,* 154 Ill. 640, prostitution was defined as the act
or practice of prostituting or offering the body to indis-
criminate intercourse with men or the common lewdness
of a female. A house of ill-fame or assignation for the
purpose of prostitution is therefore a house where women
prostitute themselves by offering their bodies to indiscrimi-
nate intercourse with men. (*People* v. *Rice,* 277 Ill. 521.)
The term "house of ill-fame" is synonymous with bawdy
house, having no reference to the reputation of the same.
The gist of the offense is the keeping and using of the
house for the purpose of prostitution and lewdness, and
not its reputation. *State* v. *Smith,* 29 Minn. 193; *State*
v. *Boardman,* 64 Me. 525; *Henson* v. *State,* 62 Md. 231;
*State* v. *Lee,* 80 Iowa, 75; 14 Cyc. 485.

Bishop, in his treatise on criminal law, defines a house
of prostitution or assignation as a house kept for the resort
of lewd persons for the purpose of prostitution and forni-
cation. (1 Bishop on Crim. Law, sec. 1037.) The statute
of this State includes as a house of prostitution or assig-
nation house any building or premises in the State where
prostitution, fornication or concubinage is allowed or prac-
ticed, and if the house of plaintiff in error comes within
any of these designations, and the plaintiff in error, as the
keeper thereof, permitted the prosecuting witness, Daisy
Roberts, to live, board, room or stop in such house, build-
ing or premises, she is then guilty of violation of said act.
In order to bring plaintiff in error within the scope of the

statute it is necessary that she be the person in charge of the house in question, and that such house be kept for the purpose of the practices referred to in the statute or that fornication or concubinage be allowed or practiced in such house. That she was in charge of said premises was not denied.

What constitutes the keeping of a house has been defined by Bishop as follows: "To constitute the keeping of a house of prostitution there must be the keeping of a house, though it be but one room. It is not an essential to constitute the keeping of a house of prostitution that the same be done for profit. The gist of the offense is the tendency to corrupt public morals." (1 Bishop on Crim. Law, sec. 1038.) The character of an assignation house may, however, be shown by circumstantial evidence from which the jury might fairly infer the character of such house. (*People* v. *Niehoff,* 266 Ill. 103.) In the case last cited the defendant conducted a hotel. Two young men and two young women came to this hotel and registered as man and wife, without baggage. The men stayed until towards morning, and later that day the two girls returned with other men and secured rooms, the men staying a portion of the afternoon. The testimony in that case was held sufficient to sustain a verdict of the jury finding the defendant guilty of being the keeper of a house of assignation. In the case at bar the complaining witness testified that on four different occasions,—in each instance with different men,—she had sexual intercourse with said men in the house of plaintiff in error, on one occasion remaining there over night. It is evident from the record that both complaining witness and plaintiff in error indulged in acts of sexual intercourse in said premises, the complaining witness committing such acts with different men. It was a question of fact for the jury to decide, under proper instructions from the court, whether or not the house of the plaintiff in error was a house of prostitution or assignation

or building or premises where prostitution, fornication or concubinage was allowed or practiced, and upon a review of the record we are unable to say that the jury were not justified in their finding.

Complaint is made of the instructions given and refused. We have examined these instructions and find no reversible error. The jury were instructed in the elements of the crime charged and that it would be necessary for them to find that the house in question was a house of prostitution or assignation, and that the plaintiff in error was the keeper thereof, before they could find her guilty. The jury were fully and fairly instructed.

It is also urged that the court erred in refusing to compel the State to admit the truth of the affidavit of plaintiff in error for a continuance or to grant such continuance. The affidavit was by the trial court held sufficient for continuance, and the State was required to elect whether or not the cause should be continued or should admit that if the witnesses were present they would testify as set out in the affidavit. The latter course was chosen by the State. While it lies in the discretion of the trial court to compel the State to admit the truth of an affidavit to avoid continuance, yet where, as in this case, there was no showing that the witnesses could be had at the next term of court, it was not an abuse of discretion on the part of the trial court to require only that the State admit that if the witnesses were present they would testify as set out in the affidavit.

On review of the entire record and consideration of all the assignments of error we are of the opinion that the record contains no reversible error. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*