(No. 22286.— ▮▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIE ALTERIE, Plaintiff in Error.

*Opinion filed April 21, 1934.*

JAMES M. BURKE, and GEORGE M. CRANE, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

The question in this case concerns the validity of an amendment to the Vagrancy act, approved July 6, 1933. Plaintiff in error was convicted under that amendment in the municipal court of Chicago and brings the cause here, contending that it violates the due process clauses of the

State and Federal constitutions. The amendment is as follows: "All persons who, not being persons authorized by law to carry concealed upon or about their persons, deadly weapons, are reputed to be habitual violators of criminal laws of this State or of the United States, or to habitually carry concealed on or about their persons or in motor vehicles or other conveyances pistols, revolvers or other fire-arms, or black-jacks, sling-shots, sand-clubs, sand-bags, metal knuckles, or bludgeons, or to carry or possess with intent to use the same unlawfully against another person or other persons, a dagger, dirk, billy, weapon. or instrument of like character and all persons who are reputed to act as associates, companions or bodyguards of such persons reputed as aforesaid to be such habitual violators of the criminal laws of this State or of the United States, * * * shall be deemed to be and they are declared to be, vagabonds." Cahill's Stat. 1933, sec. 270, p. 1067.

The information charges that plaintiff in error "was reputed to be an habitual violator of the criminal laws of the State of Illinois and the United States, and not being a person authorized by law to carry concealed on or about his person, or in an automobile, a deadly weapon, to-wit, a pistol, then and there was reputed to habitually carry concealed on or about his person in a certain automobile, commonly called a passenger automobile, a certain pistol." A motion to quash the information was made on the ground that the statute on which the information was based is unconstitutional in that it violates the rights guaranteed under the State and Federal constitutions, does not punish the defendant for his own act or for any criminal offense but seeks to punish him for a state of mind of the community and the thoughts of others; that it constitutes cruel and inhuman punishment and for past offenses for which he has already been put in jeopardy, and does not seek to punish for a criminal offense. The motion to quash was denied, and on the trial of the case before a jury a

number of police officers testified that plaintiff in error had been arrested a number of times for various offenses against the laws of the State of Illinois; that his reputation in Chicago was that of an habitual violator; that he was reputed to be an habitual violator of the criminal laws of this State and of the United States; that he was not a person authorized to carry concealed weapons, but that he did habitually carry concealed fire-arms about his person and in an automobile and that his reputation was that of a gunman. The jury returned a verdict finding plaintiff in error guilty of being a vagabond. He was sentenced to six months in the house of correction.

Counsel argue that no one may be convicted or punished because of any reputation he may have. The People, on the other hand, argue that one who has a reputation as a gunman or for carrying concealed fire-arms is a menace to society, which the General Assembly has power to remove or curb. It will be noted that the amendment invoked against plaintiff in error adds to the definition of a vagabond already in the statute, any person who without lawful authority is reputed to carry concealed weapons or who is reputed to be an habitual violator of criminal laws. Such person is declared by this act to be a vagabond. That the General Assembly may define a vagabond and punish him as such where he is proved guilty according to the established rules of law cannot well be doubted. Government is organized for the protection of the peaceable and law-abiding citizens against wrong and oppression in whatever form it exists. (*Hawthorn* v. *People,* 109 Ill. 302.) The police power of the State exists without reservation in the constitution. It lies at the very foundation of governmental purpose to protect and provide for the safety and good order of society. The fact that in so doing the liberty of the individual is restrained does not of itself render an act passed under the police power invalid. (*People* v. *Johnson,* 288 Ill. 442.) This court in

sustaining acts which provide greater punishment for habitual criminals has uniformly held that such acts do not violate constitutional provisions. *Featherstone* v. *People,* 194 Ill. 325; *Kelly* v. *People,* 115 id. 583.

The question here is whether the General Assembly may direct that one whose reputation is that of an habitual violator may, without more, be punished as a vagabond. No act so providing has been called to our attention, and, so far as we have been able to find on investigation, no act in effect the same has ever been enacted. Vagrancy has long been by statute declared to be a crime. By 5 George IV (chap. 83, 1824,) rogues or vagabonds were declared to include reputed thieves frequenting rivers, canals or streets with intent to commit felony. (3 Stephen's History of Criminal Law of England, p. 274; Stephen's Digest of Criminal Law, (7th ed.) p. 195.) It will be observed that this act required not only that the accused be a reputed thief, but that he be found guilty of frequenting rivers, canals, streets and the like, with intent to commit felony. Under the provisions of the Vagrancy act before us, that which stamps the accused a vagabond is not his reputation as a vagabond but his reputation as an habitual violator of criminal laws.

Opposing counsel in their briefs have cited cases in support of their contentions, none of which, however, bear directly upon the question here, and we have been unable to find such a case. The People have cited numerous cases considering statutes declaring that proof of the reputation of a house as a bawdy house or house of ill-fame shall be *prima facie* proof of the character of the house in cases where the accused is charged with being the keeper of such a house. In *State* v. *Anderson,* 82 Conn. 111, 72 Atl. 648, the act provided that every person who shall keep a house which is or is reputed to be a house of ill-fame, or which is resorted to or is reputed to be resorted to for the purpose of prostitution, etc., shall be fined or imprisoned. The

validity of the act was attacked, and it was held that the act should be construed to mean that when evidence of reputation is offered, it must, either by itself or in connection with other evidence, be sufficient to satisfy the jury, beyond a reasonable doubt, that the reputed character of the house was its true character, and that, however complete the proof of that reputation might be, there could be no conviction save it appeared that the house was, in fact, kept or used for immoral or unlawful purposes. While the courts of the country are not all in agreement, the rule represented by the great weight of authority is, that evidence of reputation of a house as a house of ill-fame is not alone sufficient to determine its actual character, and such evidence, alone, will not support an indictment charging the accused with being a keeper of a house of ill-fame. *Putman* v. *State,* 132 Pac. (Okla.) 916; *State* v. *Anderson, supra; People* v. *Wheeler,* 142 Mich. 212, 105 N. W. 607; *State* v. *Lee,* 80 Iowa, 75, 45 N. W. 545; *State* v. *Brunell,* 29 Wis. 435; *Botts* v. *United States,* 83 C. C. A. 646, and cases collected in 46 L. R. A. (n. s.) p. 593, note.

In *People* v. *Licavoli,* 250 N. W. (Mich.) 520, strongly relied upon by the plaintiff in error, the accused were convicted of the crime of being disorderly persons, it being charged that they were engaged in an unlawful occupation and business. The statute under which this conviction was had provided that proof of recent reputation of engaging in such illegal occupation constituted *prima facie* evidence that the accused was so engaged. This provision was held invalid as violating the due process clauses of the State and Federal constitutions. The question there was not the one here. It was in that case noted that the defendants were not prosecuted for having a criminal reputation but for committing a specific crime wholly independent of any reputation. Proof of the reputation under that statute was made *prima facie* evidence of the guilt of the

crime charged. The court observed that if the reputation of the accused were the crime denounced by the statute a different question would have been presented. The act before us provides that if one is reputed to be a violator of the criminal laws as therein specified, he is by reason of that reputation a vagabond.

Counsel for the People say that this act may be properly construed to mean that reputation of the fact that the accused is an habitual violator of the laws of this State and of the United States is sufficient to convict, provided it is shown that the accused is, in fact, the habitual violator he is reputed to be, and that under such a construction the act is constitutional. They say, also, that under such a construction it is incumbent on the State to prove, in addition to the reputation of the accused, violations by him of the laws of the State or of the United States, and that such was shown here. It may well be said that to sustain the charge that the accused is a vagabond the reputation proved must be based on the fact that the accused is actually an habitual violator of the criminal laws, and the construction of the act before us suggested by the People might well be adopted, since the reputation which is to stamp the accused a vagabond must mean, and doubtless was intended by the General Assembly to mean, an earned reputation and not one arising from mere idle gossip or from spite. Such a construction does not, however, remove all frailties from the act, for, assuming that the State be required to supplement proof of reputation with evidence that the accused is, in fact, an habitual violator of the criminal laws, the act nowhere defines an habitual violator.

However worthy the purpose of this act, and notwithstanding the argument that the General Assembly has the power to protect the public against those whose reputation as law violators is alone sufficient to compel innocent persons to accede to their demands, yet it is necessary that before liberty or property may be taken from anyone, regard-

less of his reputation, there must be proof that he is, in fact, an habitual criminal. This is essential to compliance with the due process requirements of the State and Federal constitutions. For the reason indicated the amendment to this act is invalid.

The judgment of the municipal court is therefore reversed.

*Judgment reversed.*

Mr. JUSTICE SHAW specially concurring: I agree with the conclusion but not in all that is said in the opinion.