## THE STATE v. TOOMBS.

| 79 | 741 |
| 102 | 697 |
| 103 | 725 |
| 79 | 741 |
| 111 | 77 |
| 79 | 741 |
| 115 | 177 |

1. **Houses of Ill Fame**: INDICTMENT: STATUTE FOLLOWED. An indictment which charges that the defendant kept a house of ill fame, resorted to by divers persons for the purposes of prostitution *or* lewdness, is not bad for duplicity on account of the use of the word "or" instead of "and." The indictment being in the language of the statute in that particular, it is not subject to the objection raised as to its form. (See citations in opinion.)

2. ———: EVIDENCE: COMPETENCY. In such case it was proper to permit a witness, who was an omnibus-driver, and who had often taken women to defendant's house, to testify that one woman whom he took there said to him that if "he saw any boys that wanted to come over to fetch them over." Such testimony was competent to show the character of the women who made the house a stopping place, and was admissible, though the conversation was not had in defendant's presence.

3. ———: EVIDENCE TO SUPPORT VERDICT. Where the evidence showed that defendant's house was known as a house of ill fame, and that lewd women and licentious men made it a place of resort, the evidence was sufficient to support a verdict of guilty of keeping a house of ill fame.

4. ———: LEWDNESS: DEFINITION. In a prosecution for keeping a house of ill fame, the court defined lewdness to be an "irregular indulgence of the animal desires." *Held* that, while the definition was inaccurate, it was not misleading, as the jury would easily understand from the nature of the case that the court meant unlawful commerce between the sexes.

5. **Criminal Practice**: MISSTATEMENT OF LAW BY COUNSEL. Counsel, in a prosecution for keeping a house of ill fame, in argument to the jury, said: "The rule is that if defendant has evidence at his command, and fails to use it, it weighs against him," and under this rule he drew the inference that defendant was guilty; because, if he was not, he could have proved the contrary by his wife and son, whom he failed to put upon the stand. *Held* that, though the rule as stated was wrong (which, however, is not decided), yet a misapprehension and misstatement of the law by counsel in argument is no ground for a reversal.

*Appeal from Benton District Court.*— Hon. G. M. Gilchrist, Judge.

Filed, May 9, 1890.

Defendant was indicted and tried for keeping a house of ill fame, and from a verdict of guilty, and judgment thereon, he apppeals.

*W. C. Connell,* for appellant.

*John Y. Stone,* Attorney General, and *J. T. Christy,* County Attorney, for the State.

Rothrock, C. J.—I.  It is claimed by counsel for appellant that the court erred in overruling a motion

1. Houses of ill fame: indictment: statute followed.

to quash the indictment.  The charging part of the indictment is as follows: "That the said defendant, Daniel Toombs, did on or about the first day of May, 1886, and on divers other days between that day and the finding of this indictment, in the county of Benton, and state of Iowa, unlawfully and wilfully keep a house of ill fame, resorted to by divers persons, whose names are unknown to this grand jury, for the purpose of prostitution or lewdness, contrary to and in violation of law."  The ground of the motion was that the indictment charged two offenses, because it is stated therein that the defendant kept a house of ill fame, resorted to for the purposes of "prostitution or lewdness."  The objection is that the word "and" should have been used between the words "prostitution" and "lewdness."  The objection appears to us to be without merit.  The crime charged in the indictment is keeping a house of ill fame, which is a single offense, and the statement of what was carried on or permitted at the house is but a statement of what acts may constitute the crime.  Moreover, the indictment is in the very language of the statute.  This is sufficient.  An indictment charging

The State v. Toombs.

an offense in the language of the statute is not open to objection on account of its form. *State v. Smith*, 46 Iowa, 670; *State v. Curran*, 51 Iowa, 112; *State v. Brewer*, 53 Iowa, 735.

II. The defendant objected and excepted to certain testimony given in behalf of the state by a witness named W. W. Brewer. He was the driver of an omnibus, and testified that he had frequently taken women to the defendant's house, in daytime and at night. He was asked the following question: "Do you remember any conversation you had with one there last winter?" The question was objected to unless the conversation with the woman was in the presence of the defendant. The objection was overruled, and the witness answered as follows: "There was one said if I saw any boys that wanted to come over to fetch them over. That is all." It is claimed that this testimony was hearsay, and, not being in defendant's presence, he was not bound by it, and that any man might be ruined by designing women making such statements. We think the evidence was competent. It was a most material fact tending to sustain the indictment. It showed that the woman making the statement was a prostitute; and that she entered the defendant's house and gave out an invitation or request to the witness to bring men to the house. The character of the women who made the house a stopping place could be shown by their conversation not in the presence of the defendant.

2. ——: evidence: competency.

III. It is further urged that the verdict is not supported by the evidence. We cannot reverse the judgment on this ground. It is sufficiently shown that the defendant was the keeper of the house, and that it had the reputation of being a house of ill fame. The evidence of the bad reputation of the house is abundant to establish the fact that it was known as a house of ill fame, and it is sufficiently shown that lewd women made it a place of resort, and that men of licentious repute visited the

3. ——: evidence to support verdict.

house. In short, the verdict appears to us to be well supported by evidence.

IV. The third paragraph of the charge given by the court to the jury is as follows: "3. You must also determine whether said house, if you find it is one of ill fame, was resorted to for the purpose of prostitution or lewdness.

*4. ——: lewdness: definition.*

Prostitution is the common lewdness of a woman for gain, or the offering of her person to indiscriminate intercourse with men, while lewdness is irregular indulgence of the animal desires. In determining the question whether said house was resorted to, you are authorized to consider, as shown in the evidence, the character of the women, if any, resorting or repairing to said house, the conduct of men visiting said house, and times men went to said house, the length of their stay, and any other facts or circumstances in evidence tending to show why women resorted to said house, if you find any did resort to it." It is objected that this instruction gives an incorrect definition of the word "lewdness;" that irregular indulgence in animal desires is not necessarily unlawful. It is true that the word "unlawful," instead of "irregular," would have been a more accurate definition. But there was no possible prejudice to the defendant by reason of this technical inaccuracy. The whole subject of the investigation on the trial was whether the plaintiff was the keeper of a house where unlawful commerce between the sexes was carried on and permitted. The jury could not have considered any other question.

V. Lastly, it is urged that one of the counsel on the part of the state, in making the closing argument to the jury, wrongfully, and to the prejudice of the defendant, made use of the following language: "The rule is that if defendant has testimony at his command, and fails to use it, it weighs against him. Now, there are no persons in the wide world that know as well as Dan Toombs' wife and son whether there were women kept

*5. CRIMINAL practice: misstatement of law by counsel.*

there in the last three years. Why did he not put them on the stand? No, gentlemen, it is true that he kept them there right along. If it were not so, Dan would have put his wife and son on the witness stand and shown it was not so." It is claimed that the rule of law stated by counsel for the state is not correct. It may be that it was not. That question we do not determine. The court made no ruling on the question. We do not think that the language should be regarded as prejudicial misconduct of counsel. In the argument of a cause to a jury counsel ought not to be prevented from drawing inferences from the evidence, and commenting upon the conduct of the parties. Some latitude must be allowed in this respect. If it is misconduct for counsel to claim that a certain proposition is law, and it transpires that he is wrong, and that the law is otherwise, very few verdicts would be allowed to stand. The judgment of the district court will be

AFFIRMED.