## STATE OF NORTH DAKOTA v. MINNIE PHILLIPS.

(49 L.R.A.(N.S.) 470, 144 N. W. 94.)

**Female — house of illfame — fornication — hire — prostitute — married woman.**

> The word "female" as used in chapter 87 of the Laws of 1909, which provides that "any female who frequents or lives in houses of illfame, or who commits fornication for hire, shall be deemed a prostitute, and shall be guilty of a misdemeanor," is *held* to include a married as well as an unmarried woman.

Opinion filed November 18, 1913.

Appeal from County Court of Ward County, *Murray, J.*

Demurrer sustained to information for charging statutory offense of prostitution, and State appeals.

Reversed.

Statement by BRUCE, J.

This is an appeal from an order sustaining a demurrer to an information which charged "that heretofore, to wit, on and between January 1, 1912, and the 6th day of June in the year of our Lord one thousand nine hundred thirteen, and especially on or about the 6th day of June, one thousand nine hundred thirteen, in the county of Ward in the said state of North Dakota, one Minnie Phillips, late of said county of Ward and state aforesaid, did commit the crime of being a prostitute, committed as follows, to wit: That at said time and place the said Minnie Phillips, a female person, did then and there wilfully and un-

lawfully commit fornification for hire by submitting her body for sexual intercourse for hire to divers men to this informant unknown. This contrary to the statute in such cases made and provided, and against the peace and dignity of the state of North Dakota." The demurrer alleged that, "The facts stated did not constitute a public offense." It was argued, in short, that the information did not state that the woman was unmarried, and that this allegation was necessary. The state on the argument agreed that the evidence would have shown that the defendant was in fact a married woman.

*R. A. Nestos,* State's Attorney, and *Dorr H. Carroll,* Assistant State's Attorney, for appellant.

The word "fornication" as used under the common law means sexual intercourse between unmarried persons. It is, however, the constituent element of all sexual offenses. People v. Rouse, 2 Mich. N. P. 209; People v. Barnes, 2 Idaho, 161, 9 Pac. 532.

The essential fact which constitutes the crime charged in fornication. Dinkey v. Com. 17 Pa. 126, 55 Am. Dec. 542.

No appearance by respondent.

BRUCE, J. (after stating the facts as above). The sole question for us to determine is whether under chapter 87 of the Laws of 1909, a married woman can be convicted of the crime of being a prostitute. We are of the opinion that she can be convicted of such an offense, and that the information sufficiently charged its commission in the case before us. The statute involved provides: "Any female who frequents or lives in houses of illfame, or who commits fornication for hire, shall be deemed a prostitute, and shall be guilty of a misdemeanor," etc. We think that married women are included within the provisions of this act. The legislature used the words "any female," and not "any unmarried female." It said, "who commits fornication for hire," and not, "who commits the crime of fornication." It is true that the common-law crime of fornication has been generally distinguished from that of adultery, and involves illicit sexual intercourse between unmarried persons, while in the latter the marriage of one or both of the parties is necessary. Illicit sexual intercourse, however, is at the foundation of both offenses, and the word "fornicate" is quite generally

used to describe illicit sexual intercourse, whether between married or unmarried persons. The act of illicit sexual intercourse is one thing, and the common-law crime is another, and the fact that we use the word in a limited sense in speaking of the common-law crime does not take away from it its original and general meaning when it is used not in connection with that common-law crime, but with one of purely statutory creation. "Illicit carnal connection," says the supreme court of Pennsylvania in Dinkey v. Com. 17 Pa. 126, 129, 55 Am. Dec. 542, "is called by different names, according to the circumstances which attend it. Unaccompanied with any facts which tend to aggravate it, it is simple fornication. When it causes the birth of an illegitimate child, it is fornication and bastardy. Where the man who commits it is married, it is adultery. When parties by whom it is done are related to one another within certain degrees of consanguinity or affinity, it becomes incest. Where it is preceded by fraudulent arts, including a promise of marriage) to gain the consent of the female, who is under twenty-one years of age, and of good repute, it assumes another name, and by the statute of 1843 is called 'seduction.' But the body of all these offenses is the illicit connection. In each case, the essential fact which constitutes the crime is fornication." The meaning of the word "fornication" as used in the statute is, in short, illicit sexual intercourse as a prostitute. In the Bible the term has been used to describe illicit sexual intercourse generally, and the Bible has perhaps entered more into our literature and dictated the meaning of our words more than all of our other books put together. This meaning was the meaning ascribed to the term by the ancient church and the ecclesiastical law, and, we believe, is the sense in which the word is generally taken and used, except when we are speaking of the common-law crime. It is also to be remembered that the word was in use long before what is known as the common-law crime of fornication had been created. See Webster's Dict.; 19 Cyc. 1435. The word "fornication," indeed, came to the English language through the ancient church and brought with it its Roman meaning. It is derived from the Latin word *fornix*, which originally meant the forceps of a beetle, then an arch, then an underground vault or cavern, then a brothel, because in the Roman cities brothels were kept in underground caverns and vaults. A fornicator then was one who carried on illicit sexual intercourse in a brothel

or for hire, and these are the very persons whom our statute was intended to reach. As above stated, where the term is used in the Bible it is used indiscriminately and in the Roman sense. The translators of the Bible were ecclesiastics and men who were learned in the Latin tongue and perhaps in the Roman law. The word has been used more often in its general sense than in connection with the common-law criminal offense, which was limited to unmarried persons, but which described an offense, and not an act. Both the act and the offense punished in the statute before us is that of prostitution, which the word really describes. See Freund's Leverett's Latin Lexicon; Webster's Dict.; People v. Rouse, 2 Mich. N. P. 209; Respublica v. Roberts, 1 Yeates, 6; Revelations, chap. ii, 20–22; 1st Corinthians, chap. v, 1; Milton's Doctrine of Divorce, Bk. II. chap. 18; Richardson's English Dict.; Mercer v. State, 17 Tex. App. 452, 5 Am. Crim. Rep. 292.

The judgment of the County Court is reversed, and the cause is remanded for further proceedings according to law.