STATE OF IOWA, Appellee, v. JAMES GARDNER, Appellant.
STATE OF IOWA, Appellee, v. JAMES DEVINNEY, Appellant.

**PROSTITUTION:** Elements of Offense—Who May Commit—"Any Person." A *man* cannot be guilty of the crime of prostitution, and therefore necessarily not of resorting to a house of ill fame for the purpose of prostitution, within the meaning of Sec. 4943, Code, 1897, the term "prostitution" in all such statutes having the universally recognized meaning of "the practice of a *female* offering her body to an indiscriminate intercourse with men," and it cannot be assumed that the legislature used the term in said statute in any other sense than its universally recognized sense, even though the statute employs the term "any person" in describing those who come within its prohibition, such latter sweeping designation in reason meaning nothing more than "any person *who can be guilty of prostitution.*"

**STATUTES:** Construction—Criminal Law—Prostitution—"Any Person"—Ejusdem Generis. It will be presumed that the legislature, in using in a statute both general and specific terms, intended such exceptions to the former as would bring them into harmony with the well-recognized meaning of the latter. So

held as to the term "any person," in the statute punishing the crime of prostitution.

**STATUTES:** Construction—Masculine Gender Extended to Females
3 —Rule of Reason. Words importing the masculine gender only may be extended to females, but not when such construction violates reason and nullifies legislative intent.

**CRIMINAL LAW:** Trial—Submission of Possible and Impossible Of-
4 fenses. The submission to the jury of two distinct offenses, of one of which the defendant cannot, in law, be guilty, is reversible error, especially where it appears that the improperly submitted offense may have been the basis for the general verdict of guilty. So *held* where the court submitted the question of resorting to a house of ill fame (a) for the purpose of prostitution and. (b) · for the purpose of lewdness, the defendant being a male person.

**CRIMINAL LAW:** Appeal and Error—Helpful Form of Argument.
5 An argument which points out what is and what is not the law of the case is helpful; not one which urges an affirmance "on general principles," irrespective of the law.

**WITNESSES:** · Credibility and Impeachment—Contradictory State-
6 ments—Cross-Examination. Cross-examination may go to any subject, however remote, if it bears on testing the character or credibility of the witness. Where a witness, on one occasion, testified that she had had improper relations with one man only, and on another occasion, that she had had such relations with 40 different men, *held*, she should have been permitted to say (a) why she had so testified differently, (b) when she had made up her mind to change her testimony, and (c) whether anyone told her to change her testimony.

**INDICTMENT AND INFORMATION:** Requisites and Sufficiency—
7 Insufficient Statement of Facts—Objection, How Raised. The objection that an indictment does not contain a statement of facts sufficient to constitute an offense may not be raised by a requested instruction peremptorily directing the jury to ·acquit on that ground. Such objection must be raised (a) by demurrer, or (b) by motion in arrest of judgment. (Secs. 5280, 5328, 5426, Code, 1897.) And a motion in arrest of judgment which simply asserts that the court erred in not giving such requested peremptory instruction does not ·properly raise the objection that the indictment is insufficient in its statement of facts.

**LEWDNESS:** Resorting for Purpose of—Instructions—Sufficiency.
8 Under a charge of "resorting to a house of ill fame for the purpose of lewdness," it is sufficient to. define lewdness as· "the

unlawful indulgence of the animal desires—lustful and licentious behaving, such as unchastity, sensuality and debauchery."

**PROSTITUTION:** Resorting for Purpose of—Visits of Friendship— Instructions. Instruction that an accused could not be convicted unless he resorted to a house of ill fame "for the purpose of prostitution and lewdness" is, in effect, stating that he could not be convicted if his visits were solely "visits of friendship."

**PROSTITUTION:** Resorting for Purpose of—Elements—Non-Necessity for Frequent Resorting. "Frequent resorting" is not necessary in order to convict one of "resorting to a house of ill fame for the purpose of prostitution and lewdness." Once so going is sufficient.

**CRIMINAL LAW:** Trial—Instructions—Applicability to Evidence. It is proper to refuse instructions not applicable to any allowable theory of the evidence. So held where one accused of resorting to a house of ill fame for the purpose of prostitution and lewdness requested instructions on the effect of only one visit or occasional visits only, there being no basis in the evidence for such a finding.

**HOUSE OF ILL FAME:** Definition—Instructions—Accuracy. A house of ill fame is a house visited by persons of both sexes for the purpose of having unlawful, indiscriminate sexual intercourse.

**HOUSE OF ILL FAME:** Evidence—Reputation of Place—Instructions. Instructions reviewed, and held to sufficiently state the rule that reputation alone is insufficient to establish the existence of a house of ill fame.

*Appeal from Plymouth District Court.*—WILLIAM D. BOIES, Judge.

TUESDAY, MARCH 14, 1916.

DEFENDANT appeals from a conviction on the charge that he resorted to a house of ill fame for the purpose of prostitution and lewdness.—*Reversed* and *Remanded.*

*T. M. Zink,* for appellant.

*K. E. Sallman* and *Miles & Steele, Amici Curiae.*

*George Cosson,* Attorney General, *Wiley S. Rankin,* Special Counsel for the State.

SALINGER, J.—I.   The statute, Code Sec. 4943, makes it
a crime to resort to a house of ill fame "for

**1. PROSTITUTION:** the purpose of prostitution."   We have to
**elements of of-**
**fense: who** determine whether the trial court erred in
**may commit:**
**"any person."** holding that both men and women are within
this statute.

While in a broad sense, "prostitution" means "the set-
ting one's self to sale or of devoting to infamous purposes
what is in one's power," it will not be questioned that the
word is in this statute used in a narrower sense, and is the
equivalent of sexual prostitution.   Such prostitution is the
conduct of a prostitute as such.

"An allegation in an indictment that a female was enticed
away with the intent of rendering her a prostitute is equiva-
lent to an allegation that it was done for the purpose of prosti-
tution." *Nichols v. State*, (Ind.) 26 N. E. 839.

A prostitute is "a woman who practices illicit intercourse
with men for hire." (Worcester's Dictionary; *Zimmerman v.
McMakin*, (S. C.) 53 Am. Rep. at 722; *Sheehey v. Cokley*, 43
Iowa at 185); one "who prostitutes her body for hire" (*Peter-
son v. Murray*, (Ind.) 41 N. E. at 837); a "female" given to
indiscriminate lewdness or promiscuous sexual intercourse for
gain (*Carpenter v. People*, 8 Barb. [N. Y.] 603, 611; *State v.
Stoyell*, [Me.] 89 Am. Dec. 716; *Davis v. Sladden*, [Ore.] 21
Pac. 140, 142).   Prostitution, in its more restricted sense, is
the practice of a female offering her body to an indiscriminate
intercourse with men.   *State v. Stoyell*, 54 Me. 24; *Haygood
v. State*, (Ala.) 13 So. 325; *State v. Goodwin*, (Kans.) 6 Pac.
899, 901; *Fahnestock v. State*, (Ind.) 1 N. E. 372; *Osborn
v. State*, 52 Ind. 526, 528; *Miller v. State*, (Ind.) 23 N. E. 94,
95; *State v. Brow*, (N. H.) 15 Atl. 216, 217; *Carpenter v.
People*, 8 Barb. (N. Y.) 603, 610; *State v. Toombs*, 79 Iowa
741; *State v. Ruhl*, 8 Iowa 447, 453; *Commonwealth v. Cook*,
53 Mass. (12 Metc.) 93, 97; *People v. Demousset*, (Cal.) 12 Pac.
788, 789.   It is the act or practice of prostituting or offering
the body to an indiscriminate intercourse with men; common

lewdness of a woman for gain; the act of permitting a common and indiscriminate sexual intercourse for hire—and it is said that same is considered a heinous offense, "for which the woman may be punished." 2 Bouvier's Dictionary (Rawle) p. 785. And see *State v. Gibson,* (Mo.) 19 S. W. at 981; *Bunfill v. People,* (Ill.) 39 N. E. at 566; and Century Dictionary. While cases hold that there may be prostitution though there be no desire for gain (*State v. Clark,* 78 Iowa 492; *State v. Rice,* 56 Iowa 431; *State v. Thuna,* [Wash.] 109 Pac. 331), all that speak on the point agree that it is the practice of a woman only.

It follows that both "prostitute" and "prostitution" have such a fixed meaning in the approved usage of the language and such peculiar and appropriate meaning in law as that, if we give effect to such meaning, the statute in question does not contemplate that a man can be a prostitute or can practice prostitution, and does not intend to punish him for what he cannot do. For one cannot purpose to do what he knows is impossible. If a man cannot commit prostitution, he cannot go to a place for the purpose of prostitution. The words having acquired such meaning, and we having ascertained "what is the appropriate and well authorized meaning of the term," we should hold that "in this sense the legislature is supposed to have used it." *State v. Ruhl,* 8 Iowa, at 453. The terms "prostitution" and "lewdness," as used in the statutes, are, by a general rule of construction, to be construed according to their most usual and best understood signification. *Bunfill v. People,* (Ill.) 39 N. E. at 566; *Fahnestock v. State,* (Ind.) 1 N. E., at 376. And see, also, *Commonwealth v. Cook,* 12 Metc. (Mass.) at 97.

## 2.

Since the statute does not, in terms, include men, we need not and do not pass upon whether the legislature could effect-

ively declare that men can be guilty of "prostitution." We
may, for the purposes of the argument,
assume that such power exists. Thus we reach
the question whether, though it was well
understood that prostitution was the act of a
woman, the legislature intended Section 4943
to include men. The trial court charged that such was the
intention. It said that though, "when we use the word 'pros-
titute,' we mean a woman, and (though) prostitution is legally
defined as the act or practice of offering the body to indis-
criminate intercourse with men," yet this section of the Code
does "include men as well as women," because it uses the
words "prostitution or lewdness." The position of appellee
is that the statute includes men because it makes it a crime
"for any person" to resort to a house of ill fame for the pur-
pose of prostitution. The view expressed by the trial judge
simply begs the question. It is a declaration that, though the
legislature, which imposes a punishment for resorting for the
purpose of prostitution, knew that prostitution is the conduct
of none but women, and though the punishment provided can
have effect as to women, the very use of the word "prostitu-
tion" proves that the punishment was intended to apply to
men.

*2. STATUTES: construction: criminal law: prostitution: "any person:" ejusdem generis.*

As to the position of appellee, while it is true that ordi-
narily the words "any person" include both men and women,
this is not always so. As in all other cases, the rule of reason
controls as to the interpretation of these words.

Section 4756, Code, 1897, punishes rape upon a female
committed by "any person." Literally construed, these words
would authorize a woman, or the husband of a woman
assaulted, to be punished for rape, as principals. And so of
Code Section 4758, which prohibits "any person" to have
carnal knowledge of "any female" imbecile or rendered insen-
sible; and since a four-year-old child is a "person,"—*Sutton
v. State,* (Ga.) 50 S. E. at 61,—such child could, on the

theory of appellee, be guilty of rape, or of carnal knowledge of an imbecile, or of a woman by it rendered insensible. No court would so interpret "any person." If it were claimed that a statute like Code Section 4762, which makes it a crime for "any person" to seduce and debauch a female, contemplated a seduction and debauchment by a female, it would be held that "any person" should not be so construed, because it must be assumed that the legislature believed a woman could not commit the offense. If the claim were that the words included all who entered a dwelling in the nighttime by means of any breaking, it would be held that they did not include the owner of such dwelling, not because the owner could not thus enter, but because the legislature could not in reason have intended to include him. But whether the words are held not to include some person because the legislature knew he could not commit what is forbidden, or because it is clear for some other reason that it could not have been intended to include him in the general words, the rule of construction to be deduced from either or both cases is to exclude him, if it be clear for any reason that it was not intended to include him. We think the point within this rule. The legislature knew that "prostitution" was generally understood to be something that men could not and women could be guilty of; and that this interpretation was settled in law. It used the word in the settled sense, and "any person," to avoid repetition. The statute forbids: (1) Resort to a house of ill fame for the purpose of prostitution; (2) resort thereto for the purpose of lewdness; (3) using such house for prostitution; (4) occupying such house with such purpose; (5) inhabiting such house for such purpose; (6) using such house for the purpose of lewdness; (7) occupying same for such purpose; (8) inhabiting same for such purpose. The legislature knew that it was a matter of common knowledge that some of these can be committed by both men and women, and some by women only. It therefore refrained from labeling four of these as applying to women only. In the light of this, it is plain that

"any person" was intended to mean "any person who can be guilty of any of these;" that the purpose was to save words regarded as needless, rather than to enlarge a class of offenders. In effect, the statute is within the reasoning of cases like *State v. Cooster*, 10 Iowa 453, and *State v. Brandt*, 41 Iowa 593. It is its purpose to enable the state to indict in the alternative—to charge an offense that can be committed by men and women or by men or women or by women alone—not to permit men to be punished for what all understood they could not do. It is against reason, so long as any other explanation can be found, to suppose that a legislature which knew that all persons believed prostitution could not be practiced by a man, intended to declare that it could, and omitted to put so radical an innovation into unmistakable language. No statute that imposes a five-year imprisonment in the penitentiary should be construed to work such a change unless its words compel such interpretation. When Section 4943 was enacted, it was settled that men could not be guilty of prostitution. Hence, they did not become punishable for prostitution unless this was effected by enacting that statute. We said in *Caster v. McClellan*, 132 Iowa, at 505:

"The general rule is, however, that words must be construed according to their natural meaning; and in the case of a statute which imposes a liability which, but therefor, would have no existence, a strict construction must be given, not only to the particular words employed, but to the act generally."

Where a statute provided that all persons should be denied the right to form or be in any manner interested, either directly or indirectly, in any trust as defined by the act, it was held, against the argument that the law was unconstitutional because it prohibited two or more farmers from agreeing not to sell their wheat to a neighboring mill for less than so much a bushel, that the general language of statutes will be limited to such persons and subjects as it is reasonable to presume the legislature intended it should apply to. *State*

*v. Smiley*, (Kans.) 69 Pac. 199. In *Rohlf v. Kasemeier*, 140 Iowa 182, a case cited by the appellee, there was under consideration the construction of a statute making it unlawful for any persons to combine to fix the price of any article of merchandise or commodity. We held that the practice of medicine and surgery was labor, and did not come within the purview of the act, and we said:

"Moreover, it is well settled that in construing any statute all the language shall be considered, and such interpretation placed upon any word appearing therein as was within the manifest intent of the body which enacted the law. Much, of necessity, depends upon the context and upon the usual and ordinary consequence of the language used."

We believe both reason and authority justify us in refusing to give said general words the effect the State claims for them.

The rule *ejusdem generis* is an avoidance of giving to general words a strict construction inconsistent with the general scope of what they are found in. It is that, where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. 36 Cyc. 1119; *State v. Campbell*, 76 Iowa 122; *State v. Eno*, 131 Iowa 619; *Brown v. Bell*, 146 Iowa 89; *State v. Wignall*, 150 Iowa 650; *Denn ex dem. Low v. Goldtrap*, 1 N. J. Law 272, 274, 275; *State v. Fry*, (Mo.) 85 S. W. 328.

In *Dowell v. Vicksburg & M. R. Co.*, 61 Miss., at 529, is held that the words "any person," in a statute declaring that a railroad shall be liable for any damages or injury which may be sustained by any person from a locomotive or cars, do not embrace employes of the road. In *Carle v. Bangor, etc., Canal Co.*, 43 Me., at 271, a statute making a railroad corporation liable for damages sustained by "any person" by the neglect of its servants is held to be limited to such persons as were not the servants of the corporation, and who sustained

damages without any contributory fault.    See *Sala v. Chicago, R. I. & P. R. Co.*, 85 Iowa at 683.   In *Miller v. Coffin*, (R. I.) 36 Alt., at 8, *Sullivan v. Missouri Pac. Railway*, (Mo.) 10 S. W., at 584, *Atchison, T. & S. F. R. Co. v. Farrow*, 6 Colo., at 505, *Lutz v. Atlantic & Pac. Railway*, (N. M.) 30 Pac., at 913, *Proctor v. Hann. & St. Joe R. Co.*, 64 Mo., at 122, and *Connor v. Chicago, R. I. & P. R. Co.*, 59 Mo., at 292, in a statute permitting the representatives of "any person" who shall die from any injury resulting from or occasioned by the negligence of any person or employe while running a train of cars, the words "any persons" are held not to include a servant whose death was occasioned by the negligence of a fellow servant.

In *Dixon v. Western Union Telegraph Company*, 68 Fed., at 631, it is held that a statute providing that every corporation shall be liable in damages for personal injuries suffered "by any employe while in its service, where such injury resulted from the act or omission of any person," etc., does not impose liability upon the employer for injuries resulting from the act or omission of the person injured.   It is said that, while the language employed is capable of a construction as broad as is contended for, it will not be given such construction if to do so would lead to absurd or unjust consequences, and that the natural import of the words of a statute, according to the common use of them, when applied to the subject matter, is to be regarded as expressing the intention of the legislature, unless it is repugnant to the acknowledged principles of justice and sound public policy, in which case the words ought to be enlarged or restrained so as to comport with those principles, unless the intention of the legislature is clearly and manifestly repugnant to them, and that, therefore, it is required that the words "any person" be limited so as not to include the person injured.   And see *Jewell v. Trustees*, 113 Iowa, at 49.

The words "any person" in a statute providing for the taking of affidavits of any person for the purposes of a motion

when required by his adversary, are applicable only to those persons who may by existing laws be subjected to this species of examination; wherefore, it is held that a party to an action cannot be compelled by the adverse party to make the affidavit for the purposes of a motion. *Hodgkin v. Atlantic & Pac. Railway,* 5 Abb. Prac. (N. S.), at 74.

A statute requiring county officers to permit examination of documents by any person is to be limited to persons who have an interest of some sort, great or small, to be subserved by such examination. *Boylan v. Warren,* (Kans.) 18 Pac., at 176. The right of any person to contest the validity of a will is to be limited to any person having an interest in the subject matter of the contest. *Campbell v. Fichter,* (Ind.) 81 N. E., at 662; *Crawfordsville v. Ramsey,* (Ind.) 98 N. E., at 180.

A statute giving a lien to every laborer or miner who shall perform labor in opening, developing or operating any coal mine upon all the property of the person, firm or corporation owning or operating such mine, and used in the construction or operation thereof, does not give such lien upon the property of the owner to miners employed by an operating lessee of the mine. *Caster v. McClellan,* 132 Iowa 502. In *Powers v. Railway,* 31 Ohio Cir. Ct. R. 488, a statute relating to the lease of railroads, and making the lessor and lessee jointly liable upon all rights of action accruing to any person for any negligence or default growing out of the operation and maintenance of such railroad, is held to cover obligations of the lessor and lessee to the public, and hence not to apply to an action for negligence by an employe of the lessee against the lessor and lessee.

A corporate charter, providing that if "any person" chosen to be warden shall refuse to accept the office, he shall suffer a forfeiture, means, considering the direct provision of the same charter, only such persons as are by the terms of the charter eligible to such office. *Company v. Woodroffe,* 7 Barn. & C., 838. And in *United States v. Palmer,* 16 U. S., at 631, it is said that the words "any person or persons,"

as used in the Constitution, relating to those who commit misprision of treason or felony, are necessarily confined to any person or persons owing allegiance to the United States, though the words in themselves are broad enough to comprehend every human being.

In *State v. Brown*, (Kans.) 16 Pac., at 260, there was construed a statute punishing any person who was drunk in any highway, public place, or in his own house, etc., and it was held that "any person" should be construed to mean only such persons as act voluntarily in the performance of the interdicted act; that hence it does not include idiots, insane persons and children under seven years of age, babes, and persons who have been made drunk by force or fraud and carried into a public place, and that, therefore, one who innocently drinks of liquor which intoxicates him, without an idea that it would make him drunk, is to be held not guilty of the offense prescribed by the statute, though it in terms is made applicable to any person.

In *State v. Olson*, 108 Iowa, a case cited by appellee, we said, on page 668:

"The words 'unmarried person' in the indictment, taken alone, do not show whether that unmarried person was man or woman; but it is not in this narrow sense that we are to construe this indictment. The law has never recognized that the crime of seduction can be committed by any other than male persons, nor upon any other than female persons."

And see *Davis v. State*, (Ark.) 129 S. W. 530.

Though the briefs have not called it to our attention, we do not overlook our statute rule that "words importing the masculine gender only may be extended to females." Code Sec. 48, Par. 3. It does not operate where its application violates reason and nullifies the intent of the legislature.

3. Statutes: construction: masculine gender extended to females: rule of reason.

On the meaning to be given the words "any person," the citations for the State,

*Crane v. People,* (Ill.) 48 N. E. 54, and *Hill v. State,* (Ala.) 34 So. 406, are irrelevant. So is *Williams v. Poor,* 65 Iowa, at 413, cited by appellant. We are unable to see how *Commonwealth v. Lavonsair,* 132 Mass. 1, and *State v. Phillips,* (N. D.) 144 N. W. 94, cited by appellant, or *United States v. Cannon,* (Utah) 7 Pac. 369, and *Purdy v. People,* 4 Hill (N. Y.) 384, cited by appellant, bear upon anything in this appeal; and *State v. Myers,* 10 Iowa 448, *State v. Smith,* 46 Iowa 670, and *State v. Shaw,* 125 Iowa 422, 423, presented by appellant, and *Commonwealth v. Goodall,* (Mass.) 43 N. E. 520, and *State v. Burns,* 145 Iowa 588, cited by appellee, have very remote, if any, bearing; and whatever is said in the last as to resorting is said as to a woman defendant. The substance of the decision is as to the admissibility of evidence on reputation. *State v. Toombs,* 79 Iowa 741, upon which the state puts some reliance, was the case of a woman charged with keeping a house of ill fame, and does not touch the point now in consideration. The following citations on part of appellant are relevant to nothing involved in this appeal: *State v. Moore,* 78 Iowa 494; *State v. Hasty,* 121 Iowa 507; *Wright v. Paige,* 36 Barb. (N. Y.) 438; *Cannon v. United States,* 116 U. S. 55; *Commonwealth v. Sliney,* 126 Mass. 49; and *Sweenie v. State,* (Neb.) 80 N. W. 815.

The indictment charges that defendant feloniously resorted to a house of ill fame "for the purpose of prostitution and lewdness." The jury was directed to give time and energy which should have been expended on the consideration of a real case to considering whether defendant was guilty of something not prohibited by the statute under which he was indicted. At the least, it was made possible for the jury to find that defendant resorted for the purpose of lewdness because the jury thought he went to the house for the purpose of prostitution. To create such a situation is error. *O'Brien v. People,* 28 Mich., at 214. This might not

4. CRIMINAL LAW: trial: submission of possible and impossible offenses.

have been error, had the jury disregarded prostitution by its verdict. But it appears by the verdict that it was or may have been a basis for the verdict. And the court, by instructions overruling a motion in arrest of judgment, and entering sentence equally upon either finding, affirmatively put the element of prostitution into the case as a co-ordinate factor.

In all the steps which work a holding that Section 4943 punishes men for resorting to a house of ill fame for the purpose of prostitution, the trial court was in error. For this, we are constrained to order a reversal, notwithstanding the argument of the representatives of the State that "this is a crime which affects the very foundation of society;" that no sense of justice and no theory of fairness permits the holding a man to be innocent and a woman guilty; and that "this defendant is so plainly guilty that he should not have complained of any kind of treatment in the lower court, and is so flagrantly guilty that the finding of the lower court should be sustained." This court does not pass upon the guilt or innocence of this defendant, *de novo*. Both as to those who may be guilty and those who may be innocent, it is our duty to give to statutes which impose degrading imprisonment a construction which avoids the punishing accused where the statute proceeded under imposes no punishment. *Fahnestock v. State*, (Ind.) 1 N. E., at 377; *Bunfill v. People*, (Ill.) 39 N. E., at 567. In the last named case, it is said that prosecutions for even such offenses as this "can only be conducted under and in accordance with the statutes," and that errors entitle the defendant to a new trial because "the law warrants it and the court doth give it." We do not administer lynch law, which at times executes men because it is believed they are guilty of something and felt that they should be hung, on general principles.

II. The witness Laura Heigner testified that she had been a witness in *State v. Devinney;* that on that trial, she

5. CRIMINAL LAW: appeal and error: helpful form of argument.

testified that she had had improper relations with Devinney and him only; and she repeated the state-

6. WITNESSES: credibility and impeachment: contradictory statements: cross-examination.

ment on the instant trial. She testified also that she had been a witness in the case of *State v. Lawrence,* and as such witness had said that she had such relations with 40 different men in Mrs. Lawrence's house, and that the Brose girl was present. She testifies that both statements are true, in her opinion. Thereupon, she was asked to say why she testified thus differently as to this matter on different trials; to say why she had changed her testimony since a witness in *State v. Devinney;* to say when she first made up her mind to testify differently in the instant case; to say why she changed her testimony upon the trials of these various cases; and to say whether anyone told her to change her testimony for the instant case. To this, objections were sustained, that it is immaterial, irrelevant, unfair because there is no evidence that some of the alleged contradictory statements were made, and that it is improper cross-examination.

We think the examination was neither irrelevant nor immaterial; and that, for the purpose of cross-examination at least, it appeared sufficiently that the witness had changed her testimony substantially as the questions indicate; and that, therefore, the examination was not unfair. (See Ab. 91 to 99.) See *State v. Cater,* 100 Iowa, at 505, 516.

Was it improper cross-examination? *State v. Caron,* (La.) 42 So. 960, 963, approves the text in Roscoe that cross-examination may go to any subject, however remote if it bear upon testing the character or credibility of the witness. Inquiries into the feelings or disposition of the witness to conceal or pervert the truth are not to be excluded as being collateral. *Alward v. Oaks,* (Minn.) 65 N. W. 270. To say the least, it is proper, where a witness admits the existence of a variance between his testimony and his statements on other occasions, to examine him as to the motives inducing the variance. 7 Encyc. Ev. 69. In *State v. Pulley,* 63 N. C.

8, a witness admitted that he had, on a former occasion, denied the truth of a statement he was then making, and it is held to be admissible thereupon to ask him why he had thus formerly made denial. The accused in a criminal case should be given very large liberty in proving the motives which induced a change in the testimony of a witness from favorable to accused to favorable to the State. *People v. Dillwood,* (Cal.) 39 Pac. 438; *Galveston, H. & S. A. R. Co. v. Porfert,* (Tex.) 20 S. W. 870.

Where a party changes his testimony after a reversal by the Supreme Court and admits having read the opinion, he may be asked on cross-examination if he did not change his statement because he had seen the ground on which the case was reversed. *Galveston, H. & S. A. R. Co. v. Porfert,* (Tex.) 20 S. W. 870. Where prosecutrix changes her testimony as to the time when intercourse occurred, and admits her former testimony to have been false, it is error to sustain an objection to the question why she had given such former false testimony. *People v. Payne,* (Mich.) 91 N. W. 739.

It is our opinion that the objections should have been overruled.

III. Defendant asked the court to direct the jury to acquit on the ground that the indictment fails to charge the crime of lewdness. The offer asserts, *inter alia,* that the indictment fails to state any facts; that it sets out no acts constituting lewdness, nor states with whom committed. In effect, the offered instruction attempts to operate as a demurrer to the indictment. It is not required that we pass upon whether the indictment is well criticised. The statute permits the points raised by the offer to be raised by demurrer (Code Sec. 5328) or by motion in arrest of judgment (Code Sec. 5426). Either method of attack being sustained, it is often possible to cure the defect by a new accusation. We think it fairly appears to be the legislative intent that such an attack upon the indictment

7. INDICTMENT AND INFORMATION: requisites and sufficiency; insufficient statement of facts: objection, how raised.

shall not be made at a time when to sustain it must result in a final acquittal; that the defendant may not decline to use his right to demur nor anticipate his right to proceed by motion in arrest, and substitute for both an offered instruction which, if given, works an acquittal, thus obtaining a result which the employment of neither of the other methods would yield. Why provide for a demurrer, with power of resubmission, if same be sustained? Why provide for a second opportunity to demur by means of a motion in arrest if, at the pleasure of the defendant, neither may be used, and an acquittal be obtainable by attacking the indictment by means of an offered instruction? Who would ever use demurrer or motion in arrest if this be permissible? We can see no justification for the defendant's waiting until all the evidence has been taken on both sides to so present a demurrer to the indictment; no reason why he should not present it before the trial is actually begun; why, having passed this point, he should be allowed to anticipate the time, if ever it shall come, when he need present a motion in arrest of judgment. To make him proceed either at the one time or the other, rather than between the two, is not only orderly procedure, but absolutely fair to both the State and the defendant. It takes nothing justly due from defendant, and, as said, avoids the making said two statutes idle.

The nearest that the motion in arrest of judgment and for new trial comes to attacking the indictment is a statement that the court erred in not giving each and every paragraph of the instructions asked by the defendant. Waiving the question of definiteness in assignment, it remains the fact that this is merely a repetition of the exception taken to the refusal to give said offered instruction. As we hold that it was right to refuse the instruction, it was also right to overrule that part of the motion in arrest of judgment which complains of the refusal to give such instruction.

We must decline to review the sufficiency of the indictment with reference to charging facts, because no attack

recognized by law was below made upon the indictment. This disposition of the attack upon the indictment, and also that almost all of them are irrelevant on such attack, make the following citations of appellant ineffective: *State v. Wasson*, 126 Iowa 320; *State v. Chicago, B. & Q. R. Co.*, 63 Iowa 508; *State v. Potter*, 28 Iowa 554; *State v. McKinney*, 130 Iowa 370; *State v. Brandt*, 41 Iowa, at 607, 608; *State v. Martin*, 125 Iowa 715; *State v. Brown*, (Ohio) 21 Am. St. 790; *State v. Bauguess*, 106 Iowa 107; *State v. Ashpole*, 127 Iowa 680; *Cosgrove v. State*, (Tex.) 66 Am. St. 802; and so are *Webb v. State*, (Ala.) 18 So. 491; *Commonwealth v. Wardell*, 128 Mass. 52, cited by the State.

IV.   The court charged that lewdness is the unlawful indulgence of the animal desires, and is also legally defined to be lustful and licentious behaving, such as unchastity, sensuality and debauchery. It is urged that

8. LEWDNESS: re-sorting for purpose of: in-structions: suf-ficiency.

this does not define lewdness clearly, nor with sufficient fullness. The definitions presented by the defendant through offered instructions were:   (1) That lewdness, within the meaning of the statute, is the living or dwelling together of a man and woman who are not married to each other, as if they were;  (2) living with and having illicit sexual intercourse with but one woman to whom defendant is not married, and with whom he dwells as if he were married to her;  (3) habitually living or dwelling with some woman as his wife and habitually having illicit sexual intercourse with her without being married to her.

The authorities cited to sustain the claim that it was error to reject these, indicate that appellant labors under the misconception that he is charged with a course of incontinent living, or with habitual illicit relationships, or with offending by creating public scandal. He is accused of none of these. He is not charged with open adultery or leading a life of lewdness, but of resorting to a house of ill fame to commit lewdness, i. e., to do lewd acts. That is one reason why the citations are irrelevant. It is not relevant that resort on a single

occasion for a lewd purpose fails to prove leading a life of lewdness. *State v. McDavitt,* 140 Iowa 342. That merely decides that "one swallow does not make a summer." And so of the fact that a single act of lewdness is not the "lewd and lascivious conduct" punished as such by statute. *State v. Marvin,* 12 Iowa 499. Such statutes use "conduct" in the sense of customary behavior. It is self-evident, but not material, that a single act of illicit intercourse will not sustain a conviction for living in open adultery. *Bird v. State,* 27 Tex. Ct. of App. 635; *Bodiford v. State,* 86 Ala. 67; *People v. Salmon,* (Cal.) 83 Pac. 42. And see, too, *Wright v. State,* (Ala.) 18 So. 941; *Carotti v. State,* 42 Miss. 334; *Richey v. State,* (Ind.) 19 Ann. Cas. 654. Equally manifest, that such an act does not justify conviction for open and notorious cohabitation and adultery. *People v. Salmon,* (Cal.) 83 Pac. 42. It is, of course, true, and, equally of course, irrelevant, that resorting for an isolated act of intercourse does not warrant conviction for lewd and vicious association and cohabitation, or for open and gross lewdness, and that clandestine intercourse does not violate a statute forbidding lewdly and lasciviously abiding and cohabiting. *State v. Chandler,* 132 Mo. 155. Such statutes inhibit the unlawful living together as only man and wife may lawfully live. Of course, no isolated act of illicit intercourse is that. See *State v. Poyner,* (Wash.) 107 Pac. 181. Nor are holdings material that some acts of lewdness do not constitute the one who practices them a prostitute, nor her conduct prostitution. *Bunfill v. People,* (Ill.) 39 N. E. 565; *State v. Brow,* (N. H.) 15 Atl. 216.

In *State v. Mitchell,* 149 Iowa 362, Mr. Justice Ladd makes this distinction clear. The case involves the charge of conspiracy to induce two females to commit the crimes of adultery and lewdness, and to become prostitutes. An instruction which defines lewdness to be "the unlawful indulgence of the animal desires" is held to be inadequate and misleading, because the essence of the indictment is an attempt

to induce the women to lead an incontinent life, and the instruction compels conviction if the conspiracy was no more than to procure their willing presence for the purpose of committing a single act of incontinence—an act which would constitute neither lewdness nor prostitution. It is said that the case differs from keeping a house of ill fame, resorted to for the purpose of prostitution and lewdness, in that on indictment for the last, the term lewdness is employed in the ordinary sense as meaning a lustful, lecherous, lascivious or libidinous act. In other words, while, on the charge of leading a life of lewdness, or inducing others to lead such or to become prostitutes, there may not be a conviction merely because there was an unlawful indulgence of the animal desires, or lustful and licentious behaving, such as unchastity, sensuality and debauchery, where the charge is resorting for the purpose of lewdness, it is sufficient that the place was visited for the purpose of committing an act of lewdness, as the term is understood in the accepted usage of the language.

V.   There is evidence from which the jury might have believed that some of the visits of the defendant to the house occupied by Richard and Lillie Lawrence were visits of friendship. Defendant complains of the refusal of instructions that he might lawfully go to a house of ill fame if his purpose was that of friendly visiting, and the failure to give an equivalent direction. We think there was not such failure. The court once, if not oftener, instructed that the jury could not find defendant guilty unless convinced beyond reasonable doubt that he resorted to or used the said house "for the purpose of prostitution or lewdness." This is, of necessity, a charge that defendant could not be convicted for visiting said house for the purpose of friendly visiting. One who goes to the dwelling of his friend for the purpose of visiting as a friend does not resort to it for the purpose of prostitution. A direction, then, that it is only a visit

9. PROSTITUTION: resorting for purpose of: visits of friendship: instructions.

with the last named purpose that can convict is fairly equivalent to an instruction that visits for any other purpose are not covered by the indictment.

2.

There is a line of cases which hold, in effect, that private incontinence and resort to a place for a single night for the purpose of lewdness do not come within the statute provision against leading a life of lewdness; and that

10. PROSTITU-TION: resorting for purpose of: elements: non-necessity for frequent resorting.

incontinence by a householder with a servant in his household is not within the statute. See *State v. McDavitt*, 140 Iowa, at 344; *State v. Irvin*, 117 Iowa 469; and *People v. Pinkerton*, (Mich.) 44 N. W. 180. Complaint is made of refusal of an instruction in effect that there could be no conviction unless it was found that defendant frequently resorted to the house of the Lawrences for the purpose charged

11. CRIMINAL LAW: trial: instructions: applicability to evidence.

in the indictment, and that one or an occasional visit to an alleged house of ill fame for such purpose will not warrant a conviction. We have to say that, if the jury was warranted to find that the defendant resorted to said house for said purpose at all, it was also warranted in finding that he so resorted many times. If, then, we were to concede the rule invoked by defendant, it would still be proper to refuse said instruction; because, while the jury might find that there was no resorting for the purpose charged in the indictment, there is no theory of the evidence upon which it could find that the resorting done, if any, was occasional merely, or that defendant resorted there but once. We are, however, disinclined to affirm such a rule. *O'Brien v. People*, 28 Mich. 213, 214, does not hold that the offense of resorting is not made out unless the visits are frequent. The exact decision is that "to hold that, when such persons resort to such places, no criminal purposes can be inferred would be absurd."

While, as said, it does not sustain the contention of the defendant, it does meet his claim, also made, that the court should have charged that defendant's visits to this house should be presumed to be for an innocent purpose. In *State v. Ah Sam*, 15 Nevada 27, this very question was determined. It was there argued that to resort to such places is not to go merely once, but to go and go again—to make a practice of going. The court said that, while the etymology of the word lends some support to this argument, yet "the definitions given in the lexicons show that, whatever may have been its original meaning, it no longer means anything more in the connection in which it is employed in the statute than to go once."

VI.   There is no merit in the contention that it was error to refuse a charge, in effect, that it would not constitute the house one of ill fame because Lillie Lawrence alone therein had sexual intercourse with various men

12. Criminal
   Law: trial:
   instructions:
   applicability
   to evidence.

named in the indictment, and that, to constitute it such house, it must further be found that other women were kept or made their habitation there for the purpose of indiscriminate intercourse. While it is true that such acts of illicit commerce by the proprietor are not ordinarily sufficient to give the house this character (9 Am. & Eng. Encyc. of Law, 520; *State v. Lee*, 80 Iowa 75), even this is not always so. *State v. Young*, 96 Iowa 262; *State v. Gill*, 150 Iowa 210. Be that as it may, no theory of the evidence made the instructions asked relevant. We may assume, for the sake of argument, that the jury might have found that no woman resorted to the Lawrence house for illicit sexual commerce; but there was no evidence whereupon it might find that no one but Lillie Lawrence practiced such commerce in that house. Moreover, the court defined a house of ill fame to be one "visited by persons of both sexes for the purpose of having unlawful, indiscriminate sexual intercourse," and thus clearly negatived the thought that the acts of Lillie Lawrence alone could give the house that character.

2.

Defendant asked instructions defining a house of ill fame, the essence of which is that it is a place of resort inhabited by more than one woman actually engaged in prostitution. The court charged, instead, that it is a house

**13. HOUSE OF ILL FAME: definition: instructions: accuracy.** visited by persons of both sexes for the purpose of having unlawful, indiscriminate sexual intercourse; and defendant complains of

both acts. We are of opinion that *State v. Wilson*, 124 Iowa action of the trial court, and that *State v. Clark*, 78 Iowa, at action of the trial court, and that *State v. Clark*, 78 Iowa at 493, does so in effect. While *King v. People*, 83 N. Y. 587, and *Beard v. State*, (Md.) 17 Am. St. 536, are rightly decided, they do not hold that the definition given by the trial court is incorrect. *State v. Mullen*, 35 Iowa 199, 207, *State v. Toombs*, 79 Iowa 741, *State v. Calley*, (N. C.) 17 Am. St. 704, *State v. Chauvet*, 111 Iowa 687, 689, *Boswell v. State*, (Tex.) 85 S. W. 1076, *State v. Irvin*, 117 Iowa 469, and *State v. Lee*, 80 Iowa 75, cited by appellant, are not relevant to the point now in consideration. Neither are *State v. Beebe*, 115 Iowa 128, *People v. Mallette*, (Mich.) 44 N. W., at 963, *Johnson v. State*, (Tex.) 24 S. W. 411, *Graeter v. State*, (Ind.) 4 N. E. 461, *State v. Schaffer*, 74 Iowa 704, *State v. Steen*, 125 Iowa 307, and *State v. Wells*, 46 Iowa 662, cited by appellee. All but one of these last deal with what evidence will make it a jury question whether the proprietor of a house of ill fame knew the house was of that character and consented to what was being done therein.

3.

The defendant asked the court to charge that, while evidence of the general reputation of the Lawrence house is admissible, there may be no conviction on that alone, and there

**14. HOUSE OF ILL FAME: evidence: reputation of place: instructions.** must be some other evidence showing that such house was actually kept and used as a house of ill fame. No doubt this is the law. *State*

*v. Hendricks,* 15 Mont. 194; *State v. Steen,* 125 Iowa 307; *Botts v. United States,* 12 Am. & Eng. Ann. Cas. 271, 272.    And see *State v. Porter,* 130 Iowa 690. But the refusal of the request to charge is not error, because the court seems to have fully adopted this theory in its own instructions. In Paragraph 5, the jury is told that they should carefully consider testimony received regarding the general reputation of the house and the like; also to consider the things that were said and done in and about the same, the coming and going of people to and from it, and all the facts and circumstances shown in evidence, and from these to determine the real character of the house, which seems to be an instruction that the reputation is to be dealt with as merely one item in the proof. In Instruction 10, the jury was further charged that, while evidence of general reputation of the house is admissible, the defendant cannot be convicted on that alone, and that there must be some other evidence tending to show that the house was of the character charged; and that, in considering this question, the jury should consider all the facts and circumstances shown upon the trial, including the testimony with regard to the general reputation of the house.

VII.    Instructions offered, and one ground of the motion in arrest of judgment, assert that there was no evidence to sustain the verdict.    We are of opinion that these instructions were rightly refused, and this ground of the motion in arrest rightly overruled.    See *State v. Gill,* 150 Iowa 210. *State v. Rayburn,* 170 Iowa 514, fully supports several holdings herein announced, and is in no respect in conflict with this opinion.

For what is pointed out in the first and second divisions of this opinion, the cause must be remanded for a new trial.— *Reversed* and *Remanded.*

By stipulation, this is the order in *State v. James Devinney,* Appellant.

EVANS, C. J., LADD and GAYNOR, JJ., concur.